[Civ. No. 19503.   Second Dist., Div. One.   July 13, 1953.]

ELMER SUMMERS et al., Respondents, v. HARRY C. PARKER et al., Appellants.

George L. Hampton for Appellants.

Robert E. Friedrich and Margaret Keller for Respondents.

SCOTT (Robert H.), J. pro tem.—Defendant appeals from an adverse judgment in a personal injury action.

At about 7:30 o'clock on a Sunday evening in April, 1951, plaintiffs were riding in an automobile driven by their son, going west on California State Highway No. 118, toward the town of Santa Susana in Ventura County. Their car collided with a steer lying in the highway, causing injuries to plaintiff, Mrs. Summers. The steer was the property of defendant and had escaped from defendant's ranch where it had been placed for pasturage and it had reached the highway. This ranch had a frontage of one-half mile on the south side of the highway.

In their complaint plaintiffs alleged, and the trial court found, that it was defendant's negligence that allowed the steer to get out onto the highway. The court further found that defendant's negligence was the sole proximate cause of the collision and of the injuries to plaintiff.

On this appeal two questions are presented which require consideration: (1) Whether the evidence was sufficient to support a finding of negligence which was the proximate cause of plaintiff's injury; (2) Whether, as charged by de-

fendant, the judge of the trial court "failed to keep an open mind until all of the evidence was in, but on the contrary prejudged the case upon hearing only respondents' (plaintiffs') evidence."

Both sides agree that the doctrine of res ipsa loquitur is excluded in a case such as this by reason of the provisions of section 423, Agricultural Code. ■ But a cattle owner who *negligently* fails to keep his cattle from straying upon a highway may be held liable in a civil action for damages arising from a collision with his livestock even at a point where the highway is unfenced, in open range country. (*Jackson* v. *Hardy,* 70 Cal.App.2d 6, 14 [160 P.2d 161]; Civ. Code, § 1714.)

Defendant's land was fenced next to the highway. Wires were loose and hanging free from the poles and some posts were rotted and partly burned through; four or five posts rested on the surface of the ground and were not imbedded therein; the fence was about 3 feet high in some places. It had a gate which had been left open during the afternoon prior to the accident. Defendant had a "tenant" on the land who apparently looked after defendant's cattle at least to the extent of keeping the gate closed, and of notifying defendant when the cattle got out.

In determining whether the fence was adequate the trial court may have considered the definition of a "good and substantial" wire fence in section 412 of the Agricultural Code, and of a "lawful fence" described in section 403, Agricultural Code (added by Stats. 1947). One witness for defendant testified concerning defendant's fence:

"Q. You have in your own experience seen cattle jump or leap over a fence of that type, haven't you? A. Oh, yes, any cattle will do that sometimes. They won't make a habit of it."

Another witness had seen cattle coming through the fence at a place where it was later repaired.

It is defendant's contention that any cattle on the highway got there not through or over any portion of the fence which was inherently inadequate or through the open gate, but through a narrow open space between two posts which were 17¼ inches apart and that this space was open because the wire which defendant had placed there to close the opening had been cut by some stranger. He testified that when he left the property at 3:30 p.m. on the day of the accident the wires were intact but that early the next morning he found

them lying on the ground near the posts on which the gate swung; that they looked as if they had been cut with a sharp pair of pliers and that he saw hoofprints of several head of cattle leading to and between the posts.

The steer struck by plaintiffs' automobile weighed 650 to 700 pounds. The court found ''that it is not true that said steer escaped from defendant Harry C. Parker's property and control to the said highway through an opening cut in the wires in said defendant's fence between two posts approximately 17¼ inches apart near the gate into and on said property.'' ■ It was a question of fact for decision by the trial court whether there was negligence on the part of defendant in having a defective fence or an open gate over or through which the steer found its way onto the highway.

Defendant disclaims responsibility for the open gate because he closed it when he left at 3:30 on the afternoon of the accident. He did not padlock the gate but fastened it with a wooden slide which fitted into a slot cut into the post at the opening end of the gate. ■ Whether he was free from negligence in not providing a more secure fastening for a gate which was so necessary to keep the cattle off the highway was a question for the trier of fact. ■ If the steer left defendant's land over the inadequate fence or through the open gate, if it got out onto the highway due to negligence of defendant and was on the highway because of that negligence when the plaintiffs reached the point of the accident, the latter are entitled to recover without pointing to the exact spot at which the steer escaped from defendant's property.

Supplementing testimony in the case we learn that the trial judge viewed the premises. It was stipulated that he might do so and that he need not state in writing or verbally what he discovered. Defendant's counsel stated:

''MR. HAMPTON: So far as we are concerned I don't care about having you write down everything that you saw if you go out and look at it. We have no objection to your looking at it and I don't suppose it even necessary to suggest that it has been a couple of years since it happened.

''THE COURT: That is right.

''MR. HAMPTON: A year and three months, and there has been no stock in there since the latter part of August or the first of September of 1951 and those trees have dropped limbs down on the fence and it hasn't been repaired since

then because there was no necessity, there being no stock in there."

The stipulation was then announced as follows:

"MR. FRIEDRICH: That the Plaintiff and the Defendant both consent to the inspection of the premises by the Court without the presence of either party or their counsel and further that the Court shall not be required to state in writing or verbally, for that matter, what was discovered by the Court during the inspection of the premises."

■ On appeal we must assume that the conditions seen at the time of the inspection and the inferences based thereon support the findings. We cannot say that there is no substantial evidence to support the finding that defendant's negligence was the proximate cause of the accident. ■ "It is well established that the duty of a reviewing court 'begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support . . .' the findings and conclusions of the trial court. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)'' (*Martin* v. *Martin*, 79 Cal.App.2d 409, 411 [179 P.2d 655]; *Balasco* v. *Chick*, 84 Cal.App.2d 802, 807 [192 P.2d 76].)

■ Defendant professes to discover prejudice in the mind of the trial judge because on the motion for nonsuit the latter expressed doubt, based on his own observations, as to whether a 700-pound steer could go through a 17¼ inch opening between two posts.

The record discloses that after defendant's motion for a nonsuit counsel for both parties and the trial judge discussed the facts and the law. The latter then observed:

". . . I don't think the Court is required to take the testimony as you indicate that it has to be taken, namely, that the cattle went through that aperture of . . . seventeen and a quarter inches, . . . the Court is permitted to take into consideration his own factual information with reference to the approximate size of an animal the weight of approximately seven hundred pounds. I lived over in Wyoming several years and I have some idea of what a seven hundred pound steer can do.

". . . . . . . . . . . .

". . . for the purpose of a nonsuit it doesn't seem to me that the motion should be granted under these circumstances, . . .."

The court had in mind the principle stated in *Singleton* v. *Singleton*, 68 Cal.App.2d 681, 699 [157 P.2d 886]: "The

trial court, for the purpose of ruling on the motion for non-suit was required to accept as true all evidence favorable to plaintiff's case (*Mastro* v. *Kennedy,* 57 Cal.App.2d 499, 500 [134 P.2d 865]), to interpret all evidence most strongly against defendant, and to disregard contradictory evidence. (*Mitchell Camera Corp.* v. *Fox Film Corp.,* 8 Cal.2d 192, 197 [64 P.2d 946]; *Dempsey* v. *Star House Movers, Inc.,* 2 Cal.App.2d 720, 722 [38 P.2d 825])."

Defendant's counsel made no comment or objection at the time. Nothing was said that indicated to the trial judge that to rule impartially on a motion for a nonsuit he must lay aside any knowledge he might have of Wyoming steers or that the dimensions of the one in California which caused the accident were so unique that comparison would result in error.

Cases cited by defendant do not indicate that a trial judge must be devoid of factual information in order to escape a charge of prejudice or disqualification. Neither do they suggest any such disability as a necessary sequence of the exercise of the judicial function in deciding whether there is enough evidence to require denial of motion for a nonsuit.

*Steele* v. *Wardwell,* 57 Cal.App.2d 642, 651 [135 P.2d 628], disapproved remarks by the judge in the presence of the jury, and stated: "These remarks were not merely comments upon the evidence which had been received but the court went farther and, after an implied criticism of the knowledge of the witness who had testified, stated that he knew something of his own knowledge about this situation (stating it) . . . Not only would such statements coming from the trial judge probably have a great influence upon the jury . . . but in practical effect the trial judge testified on this point, as well as clearly intimating to the jury that he did not consider the testimony given by the experts as entitled to much weight."

No similarity to that situation appears in the instant case. It might be added that the language of defense counsel above quoted concerning inspection of the premises by the trial judge would suggest that the impression of prejudice was entirely absent at the close of the case, when all testimony, argument and remarks by the judge were fresh in the minds of the parties and their counsel.

Judgment affirmed.

White, P. J., and Doran, J., concurred.