[Civ. No. 18875.   First Dist., Div. Two.   Aug. 15, 1961.]

FRED H. PEPPER, Appellant, v. FRANK C. BISHOP, Respondent.

Boccardo, Blum, Lull, Niland & Teerlink and Edward J. Niland for Appellant.

Hoge, Fenton, Jones & Appel, Lewis L. Fenton and William B. Boone for Respondent.

DRAPER, J.—Plaintiff brought this action to recover damages for injuries sustained by him when his automobile struck a horse owned by defendant. Jury verdict was for defendant. Plaintiff appeals from the ensuing judgment.

Defendant owns and operates a thoroughbred breeding farm which fronts on the north side of the Salinas-Monterey highway. A fence 8 to 10 feet high borders the roadway along defendant's property and surrounds the entire farm. There is also a fence along the south side of the road. Within defendant's outer fence was a 30-acre field, also fenced, in which a number of mares were kept.

At about 10 o'clock at night, plaintiff drove along the highway past defendant's farm at about 50 miles per hour. He saw several horses on the highway 100 to 150 feet in front of his car. Plaintiff testified that he immediately applied his

brakes as hard as he could, slowed his car substantially but was unable to avoid striking one or more of the horses. He brought his car to a stop about 10 feet after impact. Plaintiff was thrown against the steering wheel and suffered injuries. A highway patrolman testified that no skid marks were left by plaintiff's car.

The horses were defendant's. It developed that they were four mares which had escaped from the 30-acre field. The bolt and chain which secured the gate to that field were broken in such a way as to indicate that the horses had caused the breaks. There was evidence that the gate through the main fence to the highway was open shortly after the accident, but no evidence as to how it had been opened.

The court on its own motion read to the jury section 423 of the Agricultural Code. Plaintiff makes no objection to the reading of the first part of the section, which provides that no person owning livestock shall permit such animals to stray upon a public highway, both sides of which are adjoined by fences. In fact, plaintiff himself requested an instruction upon this portion of the section. He asserts, however, that it was error to read to the jury the final sentence of the section, which reads in material part:

"In any civil action brought by the owner, driver or occupant of a motor vehicle . . . for damages caused by collision between any motor vehicle and any domestic animal or animals on a highway, there is no presumption or inference that such collision was due to negligence on behalf of the owner or the person in possession of such live stock."

The history of the statute is instructive. The first portion was enacted in substantially its present form in 1923 (Stats. 1923, chap. 266, pp. 517, 565) as section 151 of the Motor Vehicle Act. In 1931, the statute was in part relied upon for a holding that the doctrine of res ipsa loquitur should be invoked in favor of an automobile occupant injured in a collision with an animal on a highway (*Kenney* v. *Antonetti*, 211 Cal. 336 [295 P. 341]). In 1933 the statute was incorporated in the Agricultural Code as section 423, and a provision was added that in a collision with a domestic animal on a highway, there should be no "presumption" of negligence (Stats. 1933, chap. 25, pp. 60, 129, § 423). The Supreme Court, in 1936, pointed out that the doctrine of res ipsa loquitur raises only an inference and not a presumption of negligence. Thus, it was held, the 1933 amendment did not bar application of res ipsa loquitur (*Anderson* v. *I. M. Jameson Corp.*, 7 Cal.

2d 60 [59 P.2d 962]). That case dealt with a collision which had occurred in 1933. In 1935, the statute was amended to provide, as it now does, that there should be no presumption or inference of negligence of the livestock owner from the fact of collision of a vehicle and an animal (Stats. 1935, chap. 265, p. 951). *Anderson,* decided after the 1935 amendment, indicated that it was designed to eliminate the doctrine of res ipsa loquitur in this type of case. The same view has since been expressed (*Jackson* v. *Hardy,* 70 Cal.App.2d 6, 15 [160 P.2d 161]; *Galeppi Bros.* v. *Bartlett,* 120 F.2d 208, 210; and see *Summers* v. *Parker,* 119 Cal.App.2d 214, 216 [259 P.2d 59]). The conclusion that the statute as amended is designed to bar application of the doctrine of res ipsa loquitur seems inescapable.

Plaintiff argues that if the statute is construed to have the broader effect of barring all inferences from any facts established by the evidence, thus requiring that only direct evidence may prove negligence, it is unconstitutional. Since we construe the act only as eliminating the application of res ipsa in such cases, we need not consider this contention. Plaintiff's closing brief substantially concedes that the statute is constitutional if so construed. The concession seems compelled.

At base, the doctrine of res ipsa loquitur is an evidentiary rule, providing for shifting of the burden of going forward (see *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682, 688, 691 [268 P.2d 1041]). The Legislature has the power generally to prescribe the effect which shall be given to evidence (*People* v. *Associated Oil Co.,* 211 Cal. 93, 109 [294 P. 717]). Nor is this special legislation. To avoid this bar, it is only necessary that the statute operate uniformly upon the whole of a class validly selected, and that the subjects covered possess such intrinsic peculiarity as to justify the legislative determination that they require special enactment (*Glashoff* v. *Glashoff,* 57 Cal.App.2d 108, 113 [134 P.2d 316]). There can be little doubt that the animate self-propulsion of livestock warrants placing it in a class distinct from the inanimate objects—barrels, bottles or surgical instruments—for purposes of applying res ipsa loquitur. In view of these considerations, and of the presumption in favor of constitutionality (*Dittus* v. *Cranston,* 53 Cal.2d 284, 286 [347 P.2d 671]), we do not hesitate to hold this statutory provision constitutional.

Plaintiff, however, argues that the effect of reading this statute to the jury was to convey the impression that it

could draw no inferences at all, but was strictly limited to direct evidence on the issues of negligence and proximate cause. We cannot agree. The jury was instructed in detail as to the definitions of direct and indirect evidence, and was told "[t]he law makes no distinction between direct and indirect evidence as to the degree of proof required. . . . Negligence and proximate cause both may be proved by indirect evidence . . ." A further instruction emphasized that the issue of negligence is a question of fact for the jury's determination "upon all of the evidence which includes presumptions and inferences." We must view the instructions as a whole (*Fry* v. *Bank of America,* 142 Cal.App.2d 150, 159 [298 P.2d 34]; *Bassett* v. *Crisp,* 113 Cal.App.2d 295, 306 [248 P.2d 171]). In such view, we are satisfied that the jury was not misled. Rather, it was adequately informed that it should not infer negligence from the mere happening of the accident, but should draw all reasonable inferences from the evidentiary facts established at the trial.

Plaintiff also assigns error in the instruction on proximate cause (BAJI [4th ed.] 104.1). While we share the criticism of the word "compels" used therein (*Kettman* v. *Levine,* 115 Cal.App.2d 844, 849 [253 P.2d 102]), we feel that, as in Kettman, it did not mislead the jury here.

The evidence did not require an inference that defendant was negligent, and there was ample evidence to support a conclusion that plaintiff was himself negligent.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 11, 1961.