[No. C000631. Third Dist. Sept. 12, 1988.]

RALPH D. ANDREWS, Plaintiff and Appellant, v.
JIM WELLS et al., Defendants and Appellants.

## COUNSEL

Popelka, Allard, McCowan & Jones, Marc L. Shea, Jeffry W. Lochner and Franklin Bondonno for Plaintiff and Appellant.

Clyde Small, Moss & Enochian, Larry B. Moss and Keith P. Reyen for Defendants and Appellants.

## OPINION

**SPARKS, J.**—The question in this appeal is whether a bartender and his employer breached a duty of care by failing to act on an inebriated customer's request to arrange transportation home. The answer depends on whether they had a duty to act and that in turn depends on whether they had established a special relationship with the customer. Finding no such

relationship or duty under the undisputed facts of this case, we affirm the judgment of dismissal.

In this wrongful death action plaintiff Ralph D. Andrews appeals from a summary judgment entered in favor of defendants Jim Wells and Timberlanes, Inc.[1] In granting summary judgment the trial court found "as a matter of law that the death of Plaintiff's Decedent did not proximately result from the breach of any legal duty on the part of either of the said Defendants." On appeal plaintiff asserts that the trial court erred in finding that defendants did not owe a duty of care to decedent, and that there are triable issues of fact presented whether defendants breached their duty of care and proximately caused decedent's death. We agree with the trial court that defendants did not owe a legal duty to decedent and shall affirm the summary judgment on that ground.

### Factual and Procedural Background

Plaintiff's decedent, his son Jeffrey Andrews, died on March 18, 1983, as the result of being struck by a motor vehicle as he attempted to walk across a state road in Redding. An autopsy revealed that decedent had a high blood-alcohol level (.35 or .38 percent) at the time of the accident. Plaintiff filed a wrongful death action against the driver of the vehicle, Herbert Moncrief. In September 1984 plaintiff amended his complaint to name Jim Wells and Timberlanes, Inc., as defendants.

Defendant Timberlanes, Inc., is the owner of a bowling alley in Redding called, naturally, Timberlanes. Timberlanes is equipped with a bar and defendant Wells is employed as the bartender at Timberlanes. During discovery it was learned that decedent had stopped at Timberlanes for a drink on the evening of his death.

Wells was acquainted with decedent because he had been stopping at Timberlanes for two or three months before his death. Wells believed that decedent's drinking capacity was limited and that he could not "handle a whole lot of liquor."[2] On the evening of his death decedent arrived at the

---

[1] In the trial court June Spaulding and David Andrews were also named plaintiffs. Herbert Judson Moncrief III was a named defendant. Plaintiffs requested dismissal with prejudice as to Moncrief. Following the entry of summary judgment only plaintiff Ralph D. Andrews has appealed. For that reason we shall refer to the plaintiffs in the singular.

Defendants have also filed a protective cross-appeal, to be considered only in the event plaintiff should prevail in his appeal. In that cross-appeal the defendants assert that the trial court erred in determining that the complaint is not barred by the statute of limitations. Because we affirm the dismissal, we do not reach that issue.

[2] In fact decedent's blood-alcohol level at the time of his death, either .35 or .38 percent, is indicative of a whole lot of imbibing. (See the note in *Lawrence* v. *City of Los Angeles* (1942)

Timberlanes bar and was served one drink. Wells refused to serve him another drink because he appeared inebriated. Wells declared that decedent did not appear extremely intoxicated but that he was overly talkative and staggered slightly when he walked. At one point decedent asked Wells if he could arrange a ride home for him. Wells was busy preparing drinks for bowling alley customer and there were no other customers in the bar area who could give decedent a ride, so he did not reply. Not more than a minute later Wells saw that decedent had left, although he did not actually see him leave.

In his declaration Wells stated that decedent had asked him to arrange a ride for him on four or five other occasions. At these times he would request that Wells arrange a ride with some other patron; he never asked Wells to call a taxicab. On two of these occasions Wells was able to arrange a ride with other patrons. On the other occasions Wells was either too busy or there were no other patrons available to drive decedent home. On those occasions Wells did not know how decedent got home.

The Timberlanes bar is not equipped with a telephone. However, there is an intercom to the front desk from which a call for a taxicab can be made. There is a telephone at the front desk and upon request the clerk at the desk will call for a taxicab. There are also two pay phones at the front desk. At some time on the evening of his death, decedent approached the front desk to cash a check. He did not ask the clerk at the desk to call a taxicab for him.

Not long after he left the Timberlanes bar decedent was struck and killed in an auto-pedestrian collision. The police report of the incident found no fault with the driver and ascribed the cause of the accident to decedent. Plaintiff, decedent's father, blames the death on the negligence of Wells and Timberlanes. ▮▮▮ He maintains that Wells and Timberlanes caused the death of his son by failing to arrange a ride or call a taxicab for decedent.[3]

---

53 Cal.App.2d 6, 9 [127 P.2d 931].) Since it is clear that decedent did not do all of his drinking at the Timberlanes bar, Wells's perception of his drinking capacity is likely a result of decedent's consumption of alcohol before his visits to the Timberlanes bar.

[3] Plaintiff cannot ascribe the death to the fact that Wells and Timberlanes served decedent a drink when he was already intoxicated. In Civil Code section 1714 and Business and Professions Code section 25602, the Legislature abrogated a cause of action against the provider of an alcoholic beverage by declaring that intoxication rather than serving alcohol is the proximate cause of injuries caused by or to an intoxicated person. (See *Cory* v. *Shierloh* (1981) 29 Cal.3d 430 [174 Cal.Rptr. 500, 629 P.2d 8].) Plaintiff thus attempts to rely on other behavior of the defendants as the source of their alleged liability.

## Discussion

■ We begin with a brief review of the rules governing summary judgments. Code of Civil Procedure section 437c, subdivision (a) authorizes a party to move for summary judgment if it is contended that the action has no merit. "The motion for summary judgment shall be granted if all the [moving] papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Conversely, summary judgment may not be granted if the papers submitted show a triable issue of material fact. (*Gigax* v. *Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 596 [186 Cal.Rptr. 395].) Nonetheless, summary judgment may not be defeated merely because there are disputed factual issues; if the defendant's showing negates an essential element of the plaintiff's case then no amount of factual conflict upon other aspects of the case will preclude summary judgment. (*Clarke* v. *Hoek* (1985) 174 Cal.App.3d 208, 214 [219 Cal.Rptr. 845].) ■ On the other hand, it is the burden of the moving party to negate triable issues of fact in a fashion that entitles him to judgment on the issues raised by the pleadings and, should he do so, then the responding party must show the existence of sufficient evidence to require resolution in a trial. (*Gigax* v. *Ralston Purina Co., supra,* 136 Cal.App.3d at pp. 596-597.) On motion for summary judgment the judicial function is issue finding and not issue determination. (*Ibid.*) ■ And in determining whether factual issues are presented the documents of the moving party are to be strictly construed while the documents of the opposing party must be liberally construed. (*Ibid.*)

Plaintif has charged Wells and Timberlanes with negligently causing the death of his son. The elements of actionable negligence are the breach of a legal duty of care which proximately causes injury. (*United States Liab. Ins. Co.* v. *Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 594 [83 Cal.Rptr. 418, 463 P.2d 770]; see generally, 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60.) ■ While breach of duty and proximate cause normally present factual questions, the existence of a legal duty in a given factual situation is a question of law for the courts to determine. (*Clarke* v. *Hoek, supra,* 174 Cal.App.3d at p. 213.) Since the existence of a duty is an essential element of a negligence cause of action, summary judgment may be properly granted where the plaintiff is unable to show that the defendant owed such a duty. (174 Cal.App.3d at p. 214.)

■ As Witkin notes, "[t]he 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated. (b) An affirmative duty where the person occupies a particular relationship to others. In the first situation, he

is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."[4] (6 Witkin, *supra,* § 732, p. 61; citations omitted.) Thus, in considering whether a person had a legal duty in a particular factual situation, a distinction must be made between claims of liability based upon misfeasance and those based upon nonfeasance. "Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. ▮▮ Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. . . . [L]iability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care [to prevent others from being injured as a result of affirmative conduct]." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 49 [123 Cal.Rptr. 468, 539 P.2d 36]; see also *Clarke* v. *Hoek, supra,* 174 Cal.App.3d at pp. 215-216.) In the words of the Restatement Second Torts, "[t]he fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." (Rest.2d Torts, § 314.) In short, all persons are required to avoid injuring others through their affirmative conduct, but in the absence of special factors no one is required to save another from a danger which is not of his making. (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137].)

Here we deal with a question of nonfeasance. Defendants did not create a risk of harm to decedent by any affirmative action. Decedent's accident was proximately caused by his attempt to walk across a highway in an intoxicated condition. Plaintiff alleges that defendants could have and should have protected decedent from that risk of injury by arranging a ride home or calling a taxicab for him. The pivotal question here is whether defendants had a duty to save decedent from the risks attendant to his intoxication. Such a duty can arise only if it is shown that there existed a special relationship between decedent and the defendants such as would give rise to a duty to act. (*Ibid.* See also *Clarke* v. *Hoek, supra,* 174 Cal.App.3d at p. 215.)[5]

---

[4] As a leading text observes, "[i]n such relationships the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare. In addition, such relations have often involved some existing or potential economic advantage to the defendant." (Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 374.).

[5] While "one has no duty to come to the aid of another," if one in fact comes to the aid of another he is required to exercise due care and may become liable if his failure to exercise care causes injury. (*Williams* v. *State of California, supra,* 34 Cal.3d at p. 23.) We are not here concerned with an attempt to provide assistance which was performed in a negligent manner. Plaintiff charges defendants with liability for the death of his son because they failed to attempt to assist him. In such circumstances plaintiff can prevail only upon a showing of a spe-

The decisional law provides instructive examples of cases in which a duty to act has not been established. In *Williams* v. *State of California, supra,* it was claimed that the highway patrol was liable to the plaintiff because a patrolman had come to the aid of an injured motorist but did not act to secure information or preserve evidence for civil litigation. The Supreme Court noted that the highway patrol has a statutory right but not a duty to investigate accidents. Although the highway patrol sometimes investigates accidents, in the particular case the officers did not create the peril; they took no affirmative action which contributed to, increased or changed the risk. Moreover, they did not voluntarily assume responsibility to protect the plaintiff's interests and there were no allegations sufficient to find a special relationship, "namely detrimental reliance by the plaintiff . . . ." (34 Cal.3d at pp. 27-28.) Consequently the high court ruled, the highway patrol was not liable in tort because it owed no duty to the plaintiff. (*Ibid.*)

In *Clarke* v. *Hoek, supra,* the defendant was a medical proctor, assigned to observe a surgical operation in order to assess and report upon the competence of a candidate for membership in a hospital staff. The plaintiff claimed the defendant had a duty to intervene to prevent malpractice by the actual surgeon. The Court of Appeal found no special relationship which would give rise to a duty to intervene on the plaintiff's behalf and therefore no liability on the part of the defendant. (174 Cal.App.3d at pp. 216-217.)

In *Andre* v. *Ingram* (1985) 164 Cal.App.3d 206 [210 Cal.Rptr. 150], the plaintiff was injured in an automobile accident after she and the driver had consumed alcohol in the defendant's house. The plaintiff alleged that the defendant was liable for her injuries because she had failed to somehow stop plaintiff from leaving with the drunken driver. The Court of Appeal upheld the sustaining of a demurrer on the ground that upon the facts shown the defendant owed no duty to the plaintiff. (164 Cal.App.3d at pp. 210-211; see also *DeBolt* v. *Kragen Auto Supply, Inc.* (1986) 182 Cal.App.3d 269, 274-275 [227 Cal.Rptr. 258].)

As these and other cases make clear the finding of a duty to provide assistance depends upon a showing of special factors such as would give rise to an expectation that assistance would be provided and a showing that due to these factors the victim detrimentally relied upon that expectation or was otherwise dependent upon the defendant for assistance. (See, e.g., *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 208 [185 Cal.Rptr. 252, 649 P.2d 894]; *Baker* v. *City of Los Angeles* (1986) 188 Cal.App.3d 902, 909 [233 Cal.Rptr. 760]; *Morgan* v. *County of Yuba* (1964) 230 Cal.App.2d 938, 945 [41 Cal.Rptr. 508].)

---

cial relationship between decedent and defendants such that defendants were legally required to aid decedent. (*Ibid.*)

It is true that "[t]he refusal of the law to recognize the moral obligation of one to aid another when he is in peril and when such aid may be given without danger and at little cost in effort has been roundly criticized." (*Soldano* v. *O'Daniels* (1983) 141 Cal.App.3d 443, 447 [190 Cal.Rptr. 310, 37 A.L.R.4th 1183]; see also 3 Harper, James & Gray, The Law of Torts (2d ed. 1986) § 18.6, pp. 723-725; Prosser & Keeton, *supra*, § 56, p. 376, fn. 30.) As the Restatement caustically noted, "[t]he result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense but thus far they remain the law. It appears inevitable that, sooner or later, such extreme cases of morally outrageous and indefensible conduct will arise that there will be further inroads upon the older rule." (Rest.2d Torts, § 314, com. c.) But this is not such an extreme case and thus, unlike *Soldano,* is not the "time to reexamine the common rule of nonliability for nonfeasance in the special circumstances of the instant case." (*Soldano* v. *O'Daniels, supra,* 141 Cal.App.3d at p. 449.)

Plaintiff's claim that defendants owed a duty to decedent to arrange a ride home for him fails in all respects. There is no sufficient showing of special factors giving rise to a duty of assistance, nor is there any evidence of morally outrageous and indefensible conduct. The evidence submitted on the motion for summary judgment showed that decedent had been going to the Timberlanes bar for two or three months prior to his death. He had never requested defendants to call a taxicab for him and they had never done so. On four or five occasions decedent requested Wells to arrange a ride for him and on two occasions Wells had succeeded in asking another patron to drive decedent home. The mere fact that defendants had accommodated decedent in the past does not mean that they had a continuing duty to do so. "The duty of a 'good Samaritan' is limited. Once he has performed his voluntary act he is not required to continue to render aid indefinitely." (*Baker* v. *City of Los Angeles, supra,* 188 Cal.App.3d at p. 907.) Plaintiff has failed to present evidence of any special factors which would give rise to a triable issue of a special relationship from which a duty to provide assistance could be established.

The most glaring deficit in plaintiff's showing is the lack of any reliance by decedent upon defendants' supposed duty to provide a ride for him. Although plaintiff asserts that decedent relied upon defendants to provide a ride for him, the circumstances indisputably show the contrary. ▋▋ ▋▋ ▋▋ In short, if decedent had in fact relied upon an expectation that defendants would find a ride for him he would have been waiting in the bar

for his ride rather than staggering across the road at the time of the accident.[6]

For these reasons the trial court correctly granted summary judgment to defendants. Under the factual circumstances presented there was simply no duty on the part of the defendants to arrange or provide a ride for the decedent. The lack of a legal duty is fatal to plaintiff's cause of action.

The judgment is affirmed. Defendants shall recover their costs on appeal.

Puglia, P. J., and Evans, J., concurred.

The petition of plaintiff and appellant for review by the Supreme Court was denied November 30, 1988.

---

[6] If plaintiff means to suggest that decedent relied upon an expectation of a ride in getting drunk at the Timberlanes bar the claim fails. Such a "wolf in sheep's clothing" assertion is insufficient to overcome the bar to a dramshop cause of action provided in Civil Code section 1714 and Business and Professions Code section 25602. (See *DeBolt* v. *Kragen Auto Supply, Inc., supra,* 182 Cal.App.3d at p. 275; *Andre* v. *Ingram, supra,* 164 Cal.App.3d at p. 208.) In any event, even if the allegations were not statutorily barred the record does not support them. First, there is no showing of a special relationship which entitled decedent to get drunk at the Timberlanes bar in reliance on an expectation that defendants would provide a safe ride home. Second, decedent's blood-alcohol level at the time of his death (.35 or .38 percent) and the fact that he was served only one drink at the Timberlanes bar conclusively establish that decedent had engaged in an extensive drinking bout before he arrived at the Timberlanes bar and thus did not get drunk at the Timberlanes bar in reliance on some expectation of assistance.