Opinion
 

 DAVIS, J.
 

 In this personal injury action, plaintiffs sued the defendant (Dye Creek) after their car struck one of Dye Creek’s black Angus bulls that was positioned on the roadway of State Highway 44 in Lassen County. The collision occurred at night and pitted the plaintiffs’ 1977 Toyota Corolla against a bull that weighed approximately 1,200 to 1,500 pounds. Finding that Dye Creek owed no duty to plaintiffs because plaintiffs had not set forth any basis to establish that duty, the trial court granted Dye Creek a summary judgment. We reverse.
 

 Background
 

 The facts of the collision are undisputed. As described by plaintiffs, they are: “On June 19, 1988 at approximately 10:00 p.m. [plaintiff] Harold Shively was operating a 1977 Toyota Corolla eastbound on Highway 44 in Lassen County. His wife, [plaintiff] Betty [Shively], was a passenger in that vehicle. [Plaintiffs] had just traveled through a heavily forested area consisting of hilly terrain. The [plaintiffs’] vehicle was on a slight decline in a left to right curve. They entered a meadow which constitutes part of an area of land known as Hog Flat. Approximately 450 feet from the east end of the turn Mr. Shively struck a full grown black Angus bull. The bull was lying in the roadway in Mr. Shively’s lane of travel with its back toward Mr. Shively.” Tlie bull was part of a herd that Dye Creek grazed during the summer on federally owned land pursuant to a grazing permit issued by the United States Forest Service.
 

 Plaintiffs filed their complaint on June 9, 1989. They alleged that Dye Creek knew or reasonably should have known of the high accident rate
 
 *1624
 
 involving cattle and automobiles in the area of plaintiffs’ collision (Highway 44 at milepost 29); that Dye Creek owed a duty of care to motorists using Highway 44, which included “taking reasonably necessary steps to prevent creating an unreasonable risk of harm to the motoring public from cattle wandering onto and remaining on the public highway”; and that Dye Creek “negligently and carelessly managed and permitted cattle to present an extraordinary risk to motorists in and about the area of Milepost 29 and Highway 44 as a result of said cattle roaming onto and remaining on the public highway, particularly during night time hours.”
 

 Relying principally on Food and Agricultural Code sections 16904 and 17123, Dye Creek in September of 1989 brought the first of two motions for summary judgment basically contending it owed no duty to plaintiffs. (All references to sections are to the Food and Agricultural Code unless otherwise specified.) Section 16904 prohibits use of the res ipsa loquitur doctrine against cattle owners in civil actions arising from “cattle/car” collisions that occur on highways. (See
 
 Pepper
 
 v.
 
 Bishop
 
 (1961) 194 Cal.App.2d 731, 733-734 [15 Cal.Rptr. 346], and cases cited therein.) Section 17123 and related sections state that persons grazing cattle in counties “devoted chiefly to grazing,” of which Lassen is one, are not required to “fence in” their cattle (these counties are also referred to as “open range” counties; see § 16801, subd. (b); for purposes of this opinion we will consider the terms “open range” and “devoted chiefly to grazing” to be synonymous). (See §§ 17122; 17123, subd. (c);
 
 Williams
 
 v.
 
 Goodwin
 
 (1974) 41 Cal.App.3d 496, 502-503 [116 Cal.Rptr. 200].)
 
 [1]
 

 The trial court denied Dye Creek’s first motion for summary judgment, reasoning: “. . . § 17123 excludefs] owners of livestock in certain areas from the duty to ‘fence in’. It does not relieve them of the duty to exercise reasonable care in their management of their animals.”
 

 
 *1625
 
 In March of 1993, Dye Creek “renewed [its] motion for summary judgment” because, “[d] espite extensive discovery and the passage of more than three years, no evidence to support a finding of negligence has been produced to date.” As with its first motion for summary judgment, Dye Creek argued it owed no duty to plaintiffs. Dye Creek again relied on sections 16904 and 17123. And Dye Creek asserted that no duty arose from the mere fact that other accidents involving motorists and Dye Creek livestock may have occurred in the area of plaintiffs’ collision, as plaintiffs could point to no wrongful conduct on Dye Creek’s part from which a duty could be imposed such as driving cattle near a highway or leaving a gate open.
 

 Dye Creek offered the following facts to support its request for summary judgment: (1) the accident occurred in an “open range” county on a state highway that crossed land owned by the federal government; (2) Dye Creek had a permit allowing it to graze cattle on this land; (3) Dye Creek did not fence or enclose the property for which it had the grazing permit; and (4) Dye Creek was not required to “fence in” the cattle it was grazing.
 
 [2]
 

 Plaintiffs opposed Dye Creek’s second motion for summary judgment by noting that section 17123 does not immunize cattle owners from the general duty, set forth in Civil Code section 1714 and decisional law, to exercise reasonable care in the management of their cattle. Plaintiffs submitted the following items of evidence in opposition, among others: (1) copies of two identical letters that Dye Creek’s president, William Keeler, had written in 1968 to his state senator and assembly member complaining about the unreasonable losses of cattle from hit-and-run drivers (in the area of plaintiffs’ accident), and asking the state to consider fencing the area given the tremendous increase in traffic from the rapidly growing tourist and logging industries; (2) a form letter that Dye Creek sent to motorists involved in collisions with its cattle seeking reimbursement for the animal; (3) a declaration from a former official of the California Department of Transportation noting there were 21 livestock-related accidents from 1983 through 1991 on the 2-mile stretch of highway encompassing plaintiffs’ accident site; (4) Dye Creek’s answers to plaintiffs’ interrogatories acknowledging there were 21 collisions involving Dye Creek cows and vehicles during the summers from June 1984 to June 1988 just before plaintiffs’ collision, including 1 on the night before plaintiffs’ collision; and 10 more such collisions in July of 1988 and July and August of 1989; (5) William Keeler’s (Dye Creek’s owner and president) deposition statement that all of the “cattle/car” collisions on Dye Creek grazing areas have involved Dye Creek cattle; and (6) deposition excerpts from George Marsters, the United States Forest Service range conservationist responsible for grazing administration in the area of plaintiffs’ accident. Marsters, who had 32 years of experience at the time of his
 
 *1626
 
 deposition, explained that cattle cross the road in the area of plaintiffs’ accident (the Hog Hat area) because the “meadow there it’s an ideal spot [for feed and water]. The road [goes] right through the heart of them meadows and that’s where the cattle have always pulled to. It’s a heck of a drawing card,” and the road in this area “is not very high above the meadow.”
 

 Plaintiffs then concluded their opposition by noting that Dye Creek misperceived the question of duty as involving only the question of fencing. Dye Creek, said plaintiffs, had a “general duty of a cattle owner to reasonably control [its] cattle or those in [its] capacity as an occupier of land under Civil Code Section 1714.” The question of what Dye Creek should have done, plaintiffs argued, “i.e., total or partial fencing, parallel stripes along the roadway, additional cowboys, herders, moving water sources, creating new water sources such as wells, moving food or salt, or even total removal of the herd to other areas, [were] to be left to the province of the jury on the issues of breach and causation.”
 

 In ruling on Dye Creek’s second motion for summary judgment, the trial court noted that Dye Creek “seeks an adjudication that it did not have a ‘duty’ to Plaintiff[s] to keep the cow off the road.” The trial court framed the issue as follows: “In essence, the issue presented is whether [Dye Creek], as a lessee of federal property in an ‘open range’ county, as designated in [section] 17123, has any duty to keep grazing cattle off of a state highway.”
 

 The trial court noted that plaintiffs have not “suggested how the claimed duty could be met except by fencing,” and that plaintiffs “actually contend[] that the duty is to fence . . . .” In granting the summary judgment, the trial court concluded: “Cattle on summer pasture wander, graze and roam and to hold, in the absence of other facts, that the statutory exemption from fencing does not apply because cattle are known to go upon a highway renders the ‘open range’ law meaningless.”
 

 Plaintiffs moved for reconsideration. In support of that motion, they submitted a declaration from Leslie Krysl, a livestock specialist with the University of Nevada at Reno. Krysl was familiar with cattle behavior and mitigation measures to control cattle movements. Krysl explained why the cattle were on the highway in the area of plaintiffs’ accident (large open meadows with good forage and trees on one side of the road and good sources of water on the other; the meadows are colder at night and the highway is warmer, and the cattle are drawn to the warmth at night). Krysl then delineated several mitigation measures, aside from fencing, that would have been appropriate and effective; many of these aligned with the mitigation measures plaintiffs had suggested in their opposition to the second motion for summary judgment.
 

 
 *1627
 
 The trial court denied plaintiffs’ motion for reconsideration, explaining that Krysl’s declaration should have been submitted at the time of Dye Creek’s second motion for summary judgment: “I believe [plaintiffs’ counsel], I know how cases are prepared, I know how they come about, I know that nobody wants to spend their money early and then spend it a second or a third time preparing somebody for trial. H] But this was a critical stage in this case, this was the second motion for summary judgment, this was a time when we were getting right to the heart of the legal part of this case, that is, whether there was going to be a case, whether there was a duty.”
 

 This appeal then ensued.
 

 Discussion
 

 We begin with some familiar rules governing the review of summary judgments. Summary judgment is proper only when the moving party’s evidence establishes there is no issue of material fact to be tried on the issues raised by the pleadings, and the moving party is entitled to judgment.
 
 (Lipson
 
 v.
 
 Superior Court
 
 (1982) 31 Cal.3d 362, 374 [182 Cal.Rptr. 629, 644 P.2d 822];
 
 Andrews
 
 v.
 
 Wells
 
 (1988) 204 Cal.App.3d 533, 538 [251 Cal.Rptr. 344].) Should the movant meet this burden, then the opposing party must show the existence of sufficient evidence to require resolution in a trial.
 
 (Andrews,
 
 supra; Code Civ. Proc., § 437c, subd. (o)(2).) In other words, the moving party’s affidavits must set forth facts establishing every element necessary to sustain a judgment in its favor before defects in counter-affidavits need be examined. (Code Civ. Proc., § 437c, subd. (o)(2);
 
 Anderson
 
 v.
 
 City of Thousand Oaks
 
 (1976) 65 Cal.App.3d 82, 87 [135 Cal.Rptr. 127].) The judicial function in summary judgment proceedings focuses on finding issues, not determining them. (Andrews,
 
 supra.)
 
 The affidavits of the moving party are strictly construed and those of the opponent are liberally construed; doubts as to the propriety of summary judgment should be resolved against granting the motion.
 
 (Mann
 
 v.
 
 Cracchiolo
 
 (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].)
 

 Nonetheless, summary judgment may be appropriate even if there are disputed factual issues; if the defendant’s showing negates an essential element of the plaintiff’s case, no amount of factual conflict upon other aspects of the case will preclude summary judgment.
 
 (Andrews
 
 v.
 
 Wells,
 
 204 Cal.App.3d at p. 538;
 
 Clarke
 
 v.
 
 Hoek
 
 (1985) 174 Cal.App.3d 208, 214 [219 Cal.Rptr. 845]; see Code Civ. Proc., § 437c, subd. (o)(2).)
 

 “While breach of duty and proximate cause normally present factual questions, the existence of a legal duty in a given factual situation is a
 
 *1628
 
 question of law for the courts to determine.
 
 (Clarke
 
 v.
 
 Hoek,
 
 174 Cal.App.3d at p. 213.) Since the existence of a duty is an essential element of a negligence cause of action, summary judgment may be properly granted where the plaintiff is unable to show that the defendant owed such a duty. (174 Cal.App.3d at p. 214.)”
 
 (Andrews
 
 v.
 
 Wells,
 
 204 Cal.App.3d at p. 538.)
 

 The issue of Dye Creek’s duty of care is
 
 the issue
 
 in this appeal. The trial court found no such duty because the principles of “open range” law governing counties “devoted chiefly to grazing,” such as Lassen County (§ 17123, subd. (c)), exempt cattle owners from the duty to enclose their cattle, and the plaintiffs “actually contendQ that the duty is to fence. . . .” As we explain pursuant to our independent review (see
 
 AARTS Productions, Inc.
 
 v.
 
 Crocker National Bank
 
 (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203]), the trial court went “estray” in concluding that plaintiffs’ position regarding duty involved only fencing.
 

 The trial court recognized correctly that a livestock owner’s general legal duty in an open range county involves more than just fencing. As stated in
 
 Summers
 
 v.
 
 Parker
 
 (1953) 119 Cal.App.2d 214 [259 P.2d 59]: “[A] cattle owner who
 
 negligently
 
 fails to keep his cattle from straying upon a highway may be held liable in a civil action for damages arising from a collision with his livestock
 
 even at a point where the highway is unfenced, in open range country. (Jackson
 
 v.
 
 Hardy
 
 [1945] 70 Cal.App.2d 6, 14; Civ. Code, § 1714.)”
 
 (Id.,
 
 at p. 216, first italics in original; second italics added; parallel citations omitted.) Neither
 
 Jackson
 
 v.
 
 Hardy
 
 (1945) 70 Cal.App.2d 6 [160 P.2d 161] nor
 
 Summers
 
 involved a “cattle/car” collision in an open range county (i.e., a county “devoted chiefly to grazing”—see §§ 17123 and 16801). But the case which
 
 Jackson
 
 cited approvingly for this
 
 principle—Galeppi Bros. Inc.
 
 v.
 
 Bartlett
 
 (9th Cir. 1941) 120 F.2d 208—did. (70 Cal.App.2d at p. 14.)
 

 In
 
 Galeppi,
 
 the court upheld a judgment for a plaintiff who was injured when his car struck a cow belonging to the defendants on a highway running “through open range country belonging to the United States [apparently in Lassen County].” (120 F.2d at p. 209.) The court stated the facts as follows: “Cattle graze on the land, and at the time of the accident, the highway was not fenced to prevent cattle from getting on the highway. It was the custom in that country for cattle owners to permit their cattle to range at will unattended. A creek is west of the highway, and hilly country is east of the highway. It appeared in the testimony that cattle would stay near water during the day, and move to feeding grounds at night and that at the time when the accident happened, the best feeding grounds were higher in the hills. The cow struck by [plaintiff] was one of a group of cows owned by
 
 *1629
 
 [defendants], moving across the highway from the creek toward the hills . . . [ft] The highway [carries] a fairly heavy volume of traffic . . . [Defendants] knew that the highway was well-travelled and that the cattle would cross and re-cross the highway.” (120 F.2d at pp. 209-210.)
 

 The plaintiff in
 
 Galeppi
 
 alleged and the trial court found that defendants were negligent in the care, management and control of their cattle. (120 F.2d at p. 210.) On appeal, the
 
 Galeppi
 
 court rejected the defendants’ contention that they had no duty to keep their cattle off an unfenced highway since the “common law” made no such requirement and that was still the law in California. (Ibid.; see
 
 Jackson
 
 v.
 
 Hardy,
 
 70 Cal.App.2d at p. 14.)
 
 [3]
 
 Said Galeppi: “There is no reason for exempting cattle owners from the same duty applicable to other people to use ‘ordinary care or skill in the management of [their] property.’ Civil Code § 1714.” (120 F.2d at p. 210; see
 
 Jackson,
 
 supra;
 
 Summers
 
 v.
 
 Parker,
 
 119 Cal.App.2d at p. 216.) Civil Code section 1714 states that “Every one is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person.”
 
 (Ibid.)
 

 The duty formulated in
 
 Galeppi
 
 and recognized in
 
 Jackson
 
 and
 
 Summers
 
 rests on the firm footing of Civil Code section 1714 and finds additional support in the following principles of duty analysis.
 

 
 *1630
 
 As noted by this court in
 
 Davert
 
 v.
 
 Larson
 
 (1985) 163 Cal.App.3d 407 [209 Cal.Rptr. 445], Civil Code section 1714 applies “ ‘unless public policy clearly requires that an exception be made.’ ” (163 Cal.App.3d at p. 410, quoting
 
 Lipson
 
 v.
 
 Superior Court,
 
 31 Cal.3d at p. 372.) Although Dye Creek is not
 
 required
 
 to “fence in” its cattle in areas “devoted chiefly to grazing” (§ 17123; see § 17121 et seq.), this does not constitute a public policy exempting Dye Creek from
 
 any
 
 duty to exercise ordinary care under Civil Code section 1714. As plaintiffs’ evidence in the summary judgment proceedings has shown, there are safety measures aside from fencing that are within the realm of ordinary care. Indeed, it would be incongruous to invoke public policy as flatly prohibiting any duty of ordinary care on a cattle owner to manage and control three-quarter ton animals on well-traveled public highways, especially at night. As our high court recognized over 60 years ago (albeit in a case involving a county subject to the “fencing in” requirement): “In these days of rapid automobile transportation, the extreme hazard to drivers and passengers of animals straying unattended on the roads at night cannot be overestimated. The driver is placed in a well-nigh helpless position . . . .”
 
 (Kenney
 
 v.
 
 Antonetti
 
 (1931) 211 Cal. 336, 340 [295 P. 341].)
 

 These observations invoke two other well-settled “duty” principles. The first principle explains that “[i]n considering whether one owes another a duty of care, several factors must be weighed, including: ““[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.’ ” ’ ”
 
 (Isaacs
 
 v.
 
 Huntington Memorial Hospital
 
 (1985) 38 Cal.3d 112, 124-125 [211 Cal.Rptr. 356, 695 P.2d 653], quoting
 
 Rowland
 
 v.
 
 Christian
 
 (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)
 

 The second principle is related to the first and posits that a court’s task in analyzing the foreseeability element in the duty equation “is not to decide whether a
 
 particular
 
 plaintiff’s injury was reasonably foreseeable in light of a
 
 particular
 
 defendant’s conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.”
 
 (Ballard
 
 v.
 
 Uribe
 
 (1986) 41 Cal.3d 564, 573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624], italics in original.) A
 
 *1631
 
 cattle owner having a 1,500-pound black Angus bull situated on a well-traveled state highway at night presents a category of conduct for which a duty of ordinary care seems appropriate under
 
 Rowland
 
 and its progeny.
 

 In the trial court, Dye Creek raised the following warning flag for defining duty enunciated in
 
 Edwards
 
 v.
 
 California Sports, Inc.
 
 (1988) 206 Cal.App.3d 1284, 1287 [254 Cal.Rptr. 170], and
 
 Brooks
 
 v.
 
 Eugene Burger Management Corp.
 
 (1989) 215 Cal.App.3d 1611, 1620 [264 Cal.Rptr. 756]: “[0]ne can conjure up all manner of extreme measures which might have prevented this particular injury but that is not the issue [in defining duty]. The fundamental inquiry is whether the duty of a [property owner] to exercise reasonable care in preventing injury to persons . . . (Civ. Code, § 1714) required such measures.” As we have emphasized, and as Civil Code section 1714 emphasizes, the duty here is one of
 
 “ordinary
 
 care,” one of
 
 “reasonable
 
 care.”
 
 (Ibid.)
 
 This standard is necessarily incompatible with extreme preventive measures borne of an unbounded imagination. A brief look at the facts in
 
 Edwards
 
 and
 
 Brooks
 
 illustrates this point.
 

 In
 
 Edwards,
 
 an intoxicated fan at a sports arena injured himself after climbing atop and falling from a 50-inch concrete and metal railing fence comprised of both vertical and horizontal bars. The
 
 Edwards
 
 court asked: “[D]id defendant’s duty of due care require it to design and construct its [fence] in a manner that would thwart plaintiffs derring-do?” And then answered: “We think not.” (206 Cal.App.3d at p. 1288.)
 

 In
 
 Brooks,
 
 a child resident of an apartment complex walked off the premises of the complex and was hit by a car in the adjacent street. The child sued the apartment complex owner, claiming the premises lacked adequate fencing or other structural confinement. (215 Cal.App.3d at p. 1615.) The
 
 Brooks
 
 court found no such duty on the owner’s part, noting that courts have consistently refused to recognize a duty to persons injured in adjacent streets over which the defendant has no right of possession, management or control.
 
 (Id.,
 
 at pp. 1622-1623.)
 

 The facts of the present case are not akin to the plaintiffs intoxicated derring-do in
 
 Edwards
 
 or the defendant’s lack of possession, management and control in
 
 Brooks.
 
 We are not presented with a duty question implicating “extreme measures.” Nevertheless, we are presented with a duty question under which a cattle owner is not required to “fence in” his cattle.
 

 The “open range” law, however, relates only to the requirement of fencing livestock. (§§ 16801, 17121 et seq.;
 
 Williams
 
 v.
 
 Goodwin,
 
 41 Cal.App.3d at
 
 *1632
 
 pp. 502-503.) It does not purport to define, comprehensively, the duty of a cattle owner in “open range” counties (i.e., those counties “devoted chiefly to grazing”). It does not repeal Civil Code section 1714 or exempt cattle owners from that section’s reach. In short, livestock owners in Dye Creek’s position are not granted a blanket immunity from the duty of ordinary care solely based on statutes related to livestock fencing.
 
 [4]
 

 The “open range” law is not rendered meaningless by holding the cattle owner to a Civil Code section 1714 duty of ordinary care to motorists on public highways. Only public highways are involved, a small part of the “open range” country. The central focus of the “open range” law—livestock trespassing upon another’s property—is maintained. (See
 
 Williams
 
 v.
 
 Goodwin, supra,
 
 41 Cal.App.3d at pp. 502-503;
 
 Davis
 
 v.
 
 Blasingame
 
 (1919) 40 Cal.App. 458 [181 P. 104].) The cattle owner is still not
 
 required
 
 to fence along such highways or anywhere else in “open range” areas. Against the backdrop of the “open range” law, the duty of ordinary care in this context does not contemplate extreme preventive measures. We simply have recognized, as did the trial court, that the “open range” law does not create a blanket immunity for cattle owners for damages suffered by motorists in “cattle/car” collisions on public highways. Like “[e]very one” else in this state, the cattle owner “is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property . . . .” (Civ. Code, § 1714.)
 
 [5]
 

 The trial court wandered off the proper path in the manner in which it construed the summary judgment papers. In its second motion for summary judgment, Dye Creek submitted only the following substantive facts: this “cattle/car” accident occurred on a public highway in an “open range” county; Dye Creek had a permit authorizing it to graze cattle on the land abutting the highway; and Dye Creek was not required to “fence in” the
 
 *1633
 
 cattle. In its ruling on this motion, the trial court said that “[p]laintiff has not suggested how the claimed duty could be met except by fencing. Plaintiff actually contends that the duty is to fence. . . .”
 

 In their papers opposing the second motion for summary judgment, however, plaintiffs argued that section “17123 does not immunize cattle owners from a general duty to exercise reasonable care in the management of their animals,” and that a “distinction must be drawn between [Dye Creek’s] duties under general tort principles] as a cattle owner and . . . occupier of land . . . and its duties to fence or not to fence under [section 17123] . . . .” In their opposition, plaintiffs submitted evidence of the extensive history of “cattle/car” collisions in the area of their accident, Dye Creek’s long-standing knowledge of this history, and why cattle were attracted to this area and crossed the road there. Contrary to the trial court’s observation that plaintiffs had not “suggested how the claimed duty could be met except by fencing,” plaintiffs suggested the following methods in their opposition papers: “parallel stripes along the roadway, additional cowboys, herders, moving water sources, creating new water sources such as wells, moving food or salt, or even total removal of the herd to other areas. . . .”
 

 In contravention of settled summary judgment principles, the trial court construed Dye Creek’s moving papers liberally and plaintiffs’ opposition papers strictly.
 
 (Andrews
 
 v.
 
 Wells,
 
 204 Cal.App.3d at p. 538.) Dye Creek could not obtain summary judgment here by simply noting that it was not required to “fence in” its cattle. As the movant, it was Dye Creek’s burden to show it owed no duty to plaintiffs. (Code Civ. Proc. § 437c, subd. (o)(2);
 
 Anderson
 
 v.
 
 City of Thousand Oaks, supra,
 
 65 Cal.App.3d at p. 87;
 
 Clarke
 
 v.
 
 Hoek, supra,
 
 174 Cal.App.3d at pp. 213-214.) As we have explained, Dye Creek’s duty is not limited merely to the question of fencing but encompasses the ordinary care principle of Civil Code section 1714. It was not plaintiffs’ burden, in a motion for summary judgment brought by Dye Creek, to show that Dye Creek breached that duty.
 
 (Ibid.)
 
 To the extent the question of breach of duty was tendered in these summary judgment proceedings, it was Dye Creek’s burden to show it had not breached the duty as a matter of law. (See
 
 Andrews, supra.)
 
 Dye Creek did not do so.
 

 We conclude that Dye Creek has a duty of ordinary care to plaintiffs under Civil Code section 1714, and that Dye Creek has not shown it satisfied that duty as a matter of law.
 

 
 *1634
 
 Disposition
 

 The judgment is reversed. Plaintiffs are awarded their costs on appeal.
 

 Puglia, P. J„ and Sparks, J., concurred.
 

 [1]
 

 These Food and Agricultural Code sections state in pertinent part as follows:
 

 Section 16801: “(b) ‘Open range’ means all unenclosed lands outside of cities, towns, and villages, upon which by custom, license, or otherwise, cattle are kept or permitted to roam.”
 

 Section 16904: “In any civil action which is brought by the owner, driver, or occupant of a motor vehicle, or by their personal representatives or assignees, or by the owner of livestock, for damages which are caused by collision between any motor vehicle and any domestic animal on a highway, there is no presumption or inference that the collision was due to negligence on behalf of the owner or the person in possession of the animal.”
 

 Section 17122: “In any county or part of a county devoted chiefly to grazing and so declared pursuant to this article, a person shall not have the right to take up any estray animal found upon his premises, or upon premises to which he has the right of possession, nor shall he have a lien thereon, unless the premises are entirely enclosed with a good and substantial fence.”
 

 Section 17123: “The following counties ... are declared to be devoted chiefly to grazing:
 

 “(c) Siskiyou, Lassen, and Modoc.”
 

 [2]
 

 Dye Creek is the fictitious business name of William Keeler, Dye Creek’s sole proprietor.
 

 [3]
 

 Actually, the “common law” noted by defendants in
 
 Galeppi
 
 was the “open range”/ “devoted chiefly to grazing”/“fencing out” law that altered the common law. As explained by this court in
 
 Williams
 
 v.
 
 Goodwin,
 
 41 Cal.App.3d at pages 502-503: “By common law the owner of cattle was required to keep them confined to his own close and, it was said, was liable in damages irrespective of negligence or fault for all injuries resulting from their being permitted to range at large. . . .
 

 M
 

 “The common law rule was abrogated in the first session of the California Legislature by an enactment (commonly referred to as a ‘fencing out’ statute) which required the plaintiff to maintain a proper fence around his land as a precondition to recovery for trespass by livestock. . . . Gradually, as conditions within the state changed, the common law rule was by statute restored to designated areas of the state. . . . The Estray Act of 1915 . . . repealed all so-called ‘fencing out’ laws in the state and restored the common law rule throughout except in the six northernmost counties which were specifically exempted from the operation of the statute. . . . The successor provisions to that act are now found in sections 17001 to 17128 of the Food and Agricultural Code .... By virtue thereof, the common law rule remains applicable throughout the state except in those counties or parts thereof devoted chiefly to grazing (see § 17122) which counties and areas are specifically identified in section 17123.” (Citations and footnote omitted.)
 

 The simplest way to think of the distinction between the common law and California’s “open range” law is that under the common law the livestock owner is required to
 
 “fence in”
 
 his livestock, while under the “open range” law the person trespassed upon is required to
 
 “fence out”
 
 the livestock.
 

 [4]
 

 In an anomalous twist, an interpretation of blanket immunity would mean that while a cattle owner could always sue a motorist for the injuries inflicted on his cattle, a motorist could never sue a cattle owner for the injuries inflicted on his person.
 

 [5]
 

 Out-of-state decisions cited by the parties following oral argument support the conclusions we have reached in this opinion. Plaintiffs cite a trio of
 
 cases—Carrow Co.
 
 v.
 
 Lusby
 
 (1990) 167 Ariz. 18 [804 P.2d 747];
 
 Millard
 
 v.
 
 Smith
 
 (1972) 30 Colo. App. 466 [495 P.2d 234]; and
 
 Grubb
 
 v.
 
 Wolfe
 
 (1965) 75 N.M. 601 [408 P.2d 756]—that recognize that livestock owners are not absolved of all liability by “fencing out”/“open range” statutes and that such owners owe a duty of ordinary care to motorists traveling on public highways. Dye Creek offers a single case finding no such duty,
 
 Greer
 
 v.
 
 Ellsworth
 
 (1988) 113 Idaho 979 [751 P.2d 675], However,
 
 Greer
 
 is based on a statute quite different from the ones before us; it reads in relevant part: “No person owning, or controlling the possession of, any domestic animal running on open range, shall have the duty to keep such animal off any highway on such range, and shall not be liable for damages to any vehicle or for injury to any person riding therein, caused by a collision between the vehicle and the animal.” (751 P.2d at p. 677.)