[Civ. No. 28289. Fourth Dist., Div. One. May 1, 1984.]

JAMES E. SHIELDS, Plaintiff and Appellant, v.
COUNTY OF SAN DIEGO et al., Defendants and Respondents.

**Counsel**

Sherman & Nordstrom, Eric Logue, Al Schallau, John M. Sutherland and Jean Corey for Plaintiff and Appellant.

Stockdale, Peckham, Estes & Werner, Louis D. Estes, Rhoades, Hollywood & Neil and Bruce E. Sulzner for Defendants and Respondents.

## OPINION

**WORK, J.**—James Shields appeals an order for summary judgment for his employer, Sun Harbor Industries and its parent corporation, Westgate California Corporation, and judgment of dismissal after a demurrer was sustained without leave to amend in favor of the County of San Diego (County) on his suit to recover for injuries sustained in the course and scope of his employment. Having obtained workers' compensation, Shields fails to show any triable issues of material fact to overcome Sun Harbor's and Westgate's defense that he is limited to the exclusive remedy provision of Labor Code section 3601. Specifically, there are no facts from which it may be inferred that Westgate, a passive holding company of Sun Harbor, committed any acts causally related to the injuries, nor had any legal relationship to Shields which would permit Shields to recover against it on a "dual capacity" theory. Further, Shields' conclusory and general allegations against County fail to state a cause of action, and his repeated, unsuccessful attempts to do so show he cannot. We affirm.

### Factual and Procedural Background

On December 21, 1976, James E. Shields was injured on the job while working for Sun Harbor, a tuna fish processor. Shields was welding odor abatement equipment on the top of the employer's waste-product storage tank when the tank exploded because his equipment ignited methane gas, a byproduct of decomposing fish matter stored in the tank.

Shields received workers' insurance compensation for permanent disability and medical expenses. His complaint seeks further compensation for these same injuries on various theories. Westgate and County were joined as defendants: Westgate, as a result of its corporate relationship with Sun Harbor and as a previous operator of the premises; and County, as a result of the Air Pollution Control District's authorization, dated September 23, 1976, requiring installation of the pollution control equipment. Shields sought recovery on a number of theories sounding in negligence and premise and product liability. A pattern of demurrer by County, amendment of the pleadings by Shields, and answer and motion for summary judgment on the amended complaints by Sun Harbor and Westgate ensued until Shields filed his fifth amended complaint.

The fifth amended complaint (in issue on this appeal) was little changed from its predecessors. In it, Shields asserted causes of action against Sun Harbor and Westgate based on: (1) the "peculiar risk doctrine," (2) product liability, (3) breach of warranty, and (4) a defect in the premises; and causes of action against County based on: (1) the "peculiar risk doctrine" in conjunction with Government Code section 815.4, (2) breach of a mandatory duty pursuant to Government Code section 815.6, and (3) joint liability arising from an agency relationship with the other defendants.

County's final demurrer was sustained because the trial court found no factual inferences supporting Shields' conclusory allegations of an agency or employment relationship. The trial court accurately perceived, Shields had sought "through semantic obscurity to convert County's assertion of authority to enforce the air pollution laws into participation in the task of conforming the other defendants' enterprise to those laws."

### THE SUMMARY JUDGMENTS FOR SUN HARBOR AND WESTGATE

■ The trial court must determine whether a triable issue of fact exists. (Code Civ. Proc., § 437c; *Parker* v. *Twentieth Century-Fox Film Corp.* (1970) 3 Cal.3d 176, 181 [89 Cal.Rptr. 737, 474 P.2d 689, 44 A.L.R.3d 615].) "The court resolves the question of triable issues by examining 'support[ing] . . . or oppos[ing] . . . affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken.' [Citation.]" (*Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 441 [165 Cal.Rptr. 741].)

■ The trial court may examine the pleadings to define the issues, but it may not consider factual allegations within the complaint unless the facts are uncontroverted by papers submitted on the motion. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]; *Parker* v. *Twentieth Century-Fox Film Corp.*, *supra*, 3 Cal.3d 176, 181.) ■ The defendant moving for the summary judgment carries the burden of negating a necessary element of the plaintiff's case or establishing a complete defense. (*Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 633-634 [164 Cal.Rptr. 621].)

■ If the trial court, while strictly construing the papers supporting the motion, finds no triable issues of fact, the sole remaining question is one of law which the court must decide. (Code Civ. Proc., § 437c.)

### THE EMPLOYER, SUN HARBOR

■ Shields contends his complaint against Sun Harbor bristles with triable issues of fact. Perhaps, but none he cites are relevant on the issue

of liability. Shields cannot overcome his first legal hurdle, the exclusive remedy principle of Labor Code section 3601, subdivision (a).[1] Shields' reliance on the dual capacity doctrine to except his claim is misplaced.

The dual capacity doctrine,[2] recognized in *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8], has been applied in a number of different factual settings. (*Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 274-276 [179 Cal.Rptr. 30, 637 P.2d 266].) ■ In essence, this doctrine allows separate claims against an employer/defendant whose acts in a legal capacity other than as employer, cause injury to a person who happens to be an employee. As applied to an employer/manufacturer, it affords an injured employee, statutorily entitled to a workers' compensation award, a separate remedy against the employer when the injury results from an act or omission of the employer in a relationship distinct from that of employer/employee. Thus, an employer whose employee is injured when using a defective device manufactured by the employer for sale to the general public for use in a similar manner, is liable for breaching a set of obligations toward the employee which differs from those created by the employer/employee status. (*Id.*, at p. 282.)

In applying the dual capacity doctrine to an employer/manufacturer, the courts focus on "whether the manufacturer sells the defective product to the general public." (*Nicewarner* v. *Kaiser Steel Corp.* (1983) 143 Cal.App.3d 31, 37 [191 Cal.Rptr. 522].) The courts' rationale reflects their overriding concern for consumer protection. As stated in *Bell*: "The public policy goals underlying product liability doctrine should not be subverted by the mere fortuitous circumstance that the injured individual was an employee of the manufacturer whose product caused the injury. If the injured individual had not been an employee, he would have had a cause of action against the defendant. To deny [the plaintiff] such a cause of action because he is an employee, gives the employer more protection than envisioned by the 1911 [Workers' Compensation] Act." (*Bell* v. *Industrial Vangas, Inc., supra*, 30 Cal.3d 268, 279-280.)

In *Nicewarner* v. *Kaiser Steel Corp., supra*, 143 Cal.App.3d 31, a plaintiff/employee, acting within the course and scope of his employment, was injured when an improperly connected steel beam fell 15 feet to the ground.

___

[1]Labor Code section 3601, subdivision (a), in pertinent part, states: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy for injury or death of an employee . . . ."

[2]The Legislature altered the employee's right to pursue actions under the dual capacity doctrine by amending Labor Code section 3602. (Stats. 1982, ch. 922, § 6.) This section did not go into effect until January 1, 1983. (See Cal. Const., art. IV, § 8, subd. (c)(1).)

Although the steel beam was specifically fabricated by the products division of the employer, Kaiser Steel Corporation, the plaintiff alleged the beam was "not unique in that it was generally of a size and design regularly fabricated by [Kaiser] and stockpiled for sale to the public." (*Id.*, at p. 34.) The court determined the plaintiff was limited to his recovery under his exclusive workers' compensation remedy, holding that the dual capacity exception can only be applied if it can be demonstrated: (1) the defendant does manufacture the product for sale to the public, and (2) the risk thereby created is the same as the one to which the plaintiff was exposed. (*Id.*, at p. 40.)

■ Shields' contentions cannot pass the *Nicewarner* analysis. Sun Harbor did not design or manufacture the waste product storage tank or the pollution control equipment in issue. Nor did Sun Harbor manufacture or produce the methane gas allegedly contained in the tank. Indeed, it processed and sold only the contents of the tank, tuna fish waste products, to third parties, a fact which remains uncontroverted by Shields' filings.

Shields has repeatedly obscured the scope of Sun Harbor's operations by referring to the storage tank, its contents, and the pollution control equipment as the "subject products," and citing undesignated defects in them as proximately causing Shields' injury. However, as *Nicewarner* has determined, it is not the risk of harm of the *interaction* of the so-called subject products that is in issue. It is only through the manufacture and sale of the tuna fish waste products that Sun Harbor could be exposed to liability under the dual capacity doctrine.

The authorities Shields offers do not aid him. In each cited case, the injured plaintiff/employee was using a product specifically manufactured by the defendant/employer for sale to the general public, *in a manner in which the general public could be expected to use it.*

Sun Harbor has conclusively established all factual prerequisites for a prima facie entitlement to summary judgment based on the exclusive remedy principle.

### THE PARENT HOLDING COMPANY, WESTGATE

Westgate is a holding company of which Sun Harbor is a wholly owned subsidiary.[3]

---

[3]Apparently, Westgate was also a previous lessee of the Sun Harbor premises. However, that leasehold terminated on October 3, 1967, and Westgate claims no present right to immediate possession or control.

Shields seeks recovery from Westgate on the same theories he asserted against his employer, Sun Harbor. ■■ There has been some question in the past as to whether the exclusive remedy principle would shield the parent company of a plaintiff's employer where the parent is not itself a statutory employer. This question was resolved by a recent decision of this court. In *Gigax* v. *Ralston Purina Co.* (1982) 136 Cal.App.3d 591 [186 Cal.Rptr. 395], we held an employee of a subsidiary company may sue a parent corporation who has manufactured a defective product which caused injury to an employee of the subsidiary company when used in the scope of employment, even though the parent company has no right to control the day-to-day activities of its subsidiary's employee, an attribute normally inherent in an employer-employee relationship. This remedy is not barred by recovery of workers' compensation benefits. The exclusive remedy principle extends no further than to the employer with the right to control the employee. (*Id.*, at pp. 598-599.) This right to control is a question of fact to be measured by considerations such as who holds the right to discharge and the responsibility to pay the employee.

■■ However, merely proving Sun Harbor and Westgate are separate entities does not establish liability even under *Gigax*. Shields' failure is in his lack of facts. In contrast to the defendant in *Gigax*, Westgate does not assert an exclusive remedy defense. Instead, Westgate documents its claim it has no possessory interest in the premises or other connection with the operations causing Shields' injuries, or with his employment. Further, it has proved it neither manufactured nor was responsible for the condition of the storage tank or its contents.

In analyzing Westgate's refutation, we face a preliminary question which has not been previously addressed. Can Shields impute the acts and omissions of the subsidiary corporation, Sun Harbor, to the parent corporation, Westgate, when the exclusive remedy principle prohibits a direct claim against Sun Harbor?

Statutory and case law have long recognized an employee's right of action against third party tortfeasors. (Lab. Code, §§ 3602, 3852; *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 213-214 [148 Cal.Rptr. 633, 152 A.L.R. 1043].) Labor Code section 3852, in pertinent part, states: "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer." Moreover, these rights are not affected when "the 'person other than the employer' is not a stranger but has entered into a consensual legal relationship with the employer. [Citations.]"

(*Gigax* v. *Ralston Purina Co.*, *supra*, 136 Cal.App.3d 591, 598.) But allowing an action against Westgate, as a third party tortfeasor, on the imputed acts or omissions of Sun Harbor would directly oppose the purpose of the Workers' Compensation Act and the exclusive remedy provision of Labor Code section 3601.

■ The Workers' Compensation Act seeks to assure compensation to employees for harm arising within the course and scope of their employment. "Liability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury 'arises out of' and 'during the course of' that employment, then the recited policy considerations behind the exclusive remedy in workers' compensation mandating that the employer be immune from tort liability have viability." (*Bell* v. *Industrial Vangas, Inc.*, *supra*, 30 Cal.3d 268, 277.)

■ Here, Shields has already recovered his medical expenses and continues to recover permanent disability. Allowing an action against Westgate would allow double recovery for identical acts and goes beyond the intended protections of the workers' compensation system. If we allow Shields' claim against Westgate, every passive, parent business organization would face the spectre of litigation from subsidiary employee plaintiffs who have *already recovered* from an insurance system specifically designed to eliminate such litigation.

Shields has asserted four causes of action against Westgate grounded in product and premise liability. There are no factual disputes regarding any theory. Since Westgate did not produce nor market any of the so-called subject products, Shields' claims for strict product liability and breach of warranty must fail. Also, Westgate has had no possessory or leasehold interest in the premises since October 3, 1967. There is no basis to believe the methane gas being generated in a regularly used fish-waste tank nine years later was a "peculiar risk" but if it could be so construed, it cannot be reasonably inferred that Westgate's years-earlier contacts are related to it. Further, the affidavits negate any possibility Westgate was responsible for any alleged defects in the premises or products, and in fact, negate the existence of any defect. For this reason, Shields' action based on these theories also fails. The trial court properly granted summary judgment for Westgate.

## THE DEMURRER OF COUNTY

Shields contends the allegations of his fifth amended complaint against County support two statutory causes of action arising under Government Code sections 815.4 and 815.6 and a third arising from an agency relationship with Sun Harbor and Westgate.

On demurrer, pleadings are read liberally and allegations contained therein are assumed to be true. (*Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604, 610-611 [116 Cal.Rptr. 919].) However, when seeking to establish a statutory cause of action, general allegations are insufficient. (*Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240].) In a recent case, specifically addressing governmental liability under the California Tort Claims Act (Gov. Code, § 810 et seq.), the Court of Appeal held, "[b]ecause recovery is based on a statutory cause of action, the plaintiff must set forth facts in his complaint sufficiently detailed and specific to support an inference that each of the statutory elements of liability is satisfied. General allegations are regarded as inadequate. [Citations.]" (*Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5 [190 Cal.Rptr. 694].) This rule is consistent with the stated intent of the Tort Claims Act " 'to confine potential governmental liability to rigidly delineated circumstances. . . .' [Citations.]" (*Galli* v. *State* (1979) 98 Cal.App.3d 662, 674-675 [159 Cal.Rptr. 721], quoting *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125].)

Shields alleges Sun Harbor and Westgate were "independent contractors" of County, that all defendants were agents and employees of one another, and that County "caused the commencement of an enterprise" which harmed the plaintiff. In reality, County, through the Air Pollution Control Board, has only issued an authorization, based on Sun Harbor's previously submitted plans, for construction. Shields does not allege County actually supervised or controlled the installation of the odor abatement equipment. Nor does he offer allegations sufficient to infer there was, in fact, an employment or independent contractor relationship between County and the other defendants. Such an allegation is a *sine qua non* of liability under Government Code section 815.4.

In sum, Shields' pleadings are factually insufficient and fail to state a cause of action. As the trial judge cogently stated, "The County could no doubt become a participant, but the conclusory allegations made are not enough to support a determination it has. Five times are enough."

*Disposition*:

Orders affirmed.

Staniforth, Acting P. J., and Wiener, J., concurred.