Danny Ray HINKLE and Rebecca
Lynn Hinkle, Plaintiffs,

v.

DELAVAN INDUSTRIES, INC.; Ryder
Automotive Operations, Inc. d/b/a Dela-
van and f/k/a Delavan Industries, Inc.;
Ryder System, Inc.; Ryder Automotive
Carrier Group, Inc. f/k/a Ryder Automo-
tive Carrier Division; Ryder Services
Corporation a/k/a Ryder Claims Ser-
vices; and Ryder's Automotive Carrier
Division, Defendants.

No. 97–2458–TUV.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 30, 1998.

Richard Baker, Gilreath & Associates,
Knoxville, TN, for Danny Ray Hinkle, Re-
becca Lynn Hinkle.

J. Brook Lathram, Andrew B. Carter,
Todd Allen Rose, Burch Porter & Johnson,
Paris, TN, for Ryder Automotive Operations,
Inc., Ryder System, Inc., Ryder's Automotive
Carrier Division.

J. Brook Lathram, Andrew B. Carter,
Burch Porter & Johnson, Memphis, TN, for
Ryder's Automotive Carrier Group, Inc.

Henry T.V. Miller, McDonald Kuhn Smith
Miller & Tait, Memphis, TN, for Ryder Ser-
vices, Corp.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TURNER, District Judge.

The defendants in this case are all corpo-
rate relatives of Danny Ray Hinkle's employ-
er, Commercial Carriers, Inc. ("CCI"). The
plaintiff's job required him to drive a trailer
that was manufactured by his employer.
The plaintiff claims that he was injured by
the trailer and that the injury was the result
of a design defect. While the plaintiff's sole
remedy against his employer is under work-
er's compensation law, he seeks to recover in
tort against CCI's corporate parents and sib-
lings, alleging that they breached a duty to
ensure that CCI safely manufactured the
trailer. Presently before the court are two
motions for summary judgment; one filed
separately by defendant Ryder Services Cor-
poration and one on behalf of all the other

defendants. The court finds summary judgment is appropriate with respect to all of the defendants.

### I. *Summary Judgment Standard*

The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the came will determine what issues of fact are material. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). Once met, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed. R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### II. *Background*

There are numerous corporate defendants involved in this case and it will be helpful to begin by identifying the parties involved. Defendant Ryder System, Inc. ("RSI") is a holding company which is engaged in the business of investing in and directing other companies. RSI owns 100% of Ryder Automotive Carrier Group ("RACG"), which in turn owns 100% of Ryder Automotive Operations, Inc. ("RAOI"). Hinkle's employer, CCI, was a wholly-owned subsidiary of RAOI during the relevant time period.

RACG and RAOI belong to RSI's Automotive Carrier Division ("RACD"). RACD is not a corporate entity; it is a term used to encompass a group of subsidiary trucking-related service corporations owned by RAOI and RACG.

Delavan Industries, Inc. no longer exists as a corporate entity. In December of 1991, Delavan was merged into RAOI. After the merger, Delavan existed only as a trade name. In December of 1993, RAOI divested itself of its Delavan manufacturing assets by making a capital contribution and transfer of assets to CCI. Finally, Ryder Services Corporation is a wholly-owned subsidiary of RSI responsible for handling all worker's compensation claims within the Ryder system.

With the parties identified, the court turns to the events that prompted this action. As a truck driver, Hinkle's responsibilities included driving tractor-trailers that haul automobiles. To assist the loading and unloading of automobiles, the trailer used by Hinkle was equipped with skids. These skids were pulled from the storage area within the trailer for the loading and unloading process and pushed back into the storage area when not needed. On May 19, 1996, Hinkle was injured while attempting to maneuver a skid.

The particular trailer used by Hinkle was manufactured by his employer, CCI. When reduced to a reasonable summary, the complaint alleges that trailer was negligently designed and that CCI's parent corporations were negligent in not requiring a redesign of the trailer.

Six years prior to Hinkle's injury, in 1990, RSI formed a group known as the Herron Task Force ("HTF"), the purpose of which was to raise the consciousness of the subsidiaries about the severity of safety problems and of the related high costs. The HTF was made up of various persons from RSI and its subsidiaries. It looked for injury trends, gathered statistics and other related information and even discussed "in the most general terms" (Herron Dep. at 251) the unloading and loading of cars.

The issue then is whether a parent company which establishes a task force such as RSI did, may be held liable for negligence

in not preventing injuries to its subsidiaries' employees.[1]

## III. *Analysis*

 A corporation may be found liable to its subsidiary's employees in tort for independent acts of negligence if it has undertaken the duty to prevent injuries to the subsidiary's employees.[2] *See, e.g., Gaines v. Excel Indus., Inc.,* 667 F.Supp. 569 (M.D.Tenn. 1987); *Boggs v. Blue Diamond Coal Co.,* 590 F.2d 655, 663 (6th Cir.1979). In *Gaines,* the plaintiffs, who were employees of the subsidiary corporation, were injured while on the job. The plaintiffs sued the parent corporation claiming that it had assumed a duty of care towards the subsidiary's employees by undertaking safety inspection tours of the work site, reviewing the subsidiary's safety programs, and conducting safety audits. The court found that plaintiffs had created a genuine issue of material fact sufficient to survive summary judgment. *Gaines,* 667 F.Supp. at 573. Similarly, in *Boggs* the court found that the parent corporation had undertaken the primary responsibility for ensuring safety and could therefore be liable if it breached its duty. *Boggs,* 590 F.2d at 663. In contrast, in *Thompson* the court found that while plaintiffs argued that the parent corporation had a duty to provide a safe workplace, they failed to identify any independent acts of the parent which evidenced an assumption of a duty. Therefore, no liability could lie against the parent. The key distinguishing feature between *Gaines* and *Boggs* on the one hand, and *Thompson* on the other, is the presence or lack of evidence that the parent corporation assumed a duty to ensure safety.

To establish that RSI assumed a duty, plaintiffs submitted the deposition of James Herron, taken in connection with another case at which time Herron was general counsel for RSI.[3] Plaintiffs' counsel lists numerous material facts which he claims to draw from the Herron deposition. In several instances, counsel quite simply appears to be attempting to mislead the court. For example, plaintiffs' counsel suggests that he relies on Herron's testimony to establish the "fact" that "RSI has a duty of safety to its employee and third persons." (Pls.' Resp. to Mot. for Summ.J. at 3). In fact, Herron's testimony was simply that the company and its employees must share responsibility for preventing accidents. Plaintiffs' counsel also cites Herron's deposition as support for the statement that "RSI was aware of a large number of injuries occurring to drivers and established the 'Herron Task Force' (HTF) to address injury reduction."[4] (*Id.*). In truth, Herron merely said that the task force's goal was to reduce accidents throughout the company by raising the safety consciousness of the entire Ryder enterprise. Plaintiffs' counsel also claims that Herron's deposition establishes that various mergers of RSI companies may have been orchestrated to extend worker's compensation immunity. (*Id.* at 3–4). in reality, Herron testified

1. CCI is not a party to this lawsuit. Its liability to Hinkle is limited to compensation under the Worker's Compensation Law. Tenn.Code Ann. § 50–6–108. This is true even where the employer acts negligently in a capacity outside that of employer. *See McAlister v. Methodist Hosp. of Memphis,* 550 S.W.2d 240 (Tenn.1977); *Byrd v. Munsey Products of Tennessee, Inc.,* No. C.A. 47, 1985 WL 75664 (Tenn.App. July 26, 1985) (holding that an employee injured on the job was limited to remedies under the Worker's Compensation Law despite being injured by a product designed and manufactured by the employer).

2. The plaintiffs place a great deal of emphasis on the fact that the companies under the Ryder umbrella are accountable to RSI, work closely together, and even share numerous board members. This is not sufficient to establish the liability of a parent corporation. Derivative liability— the shifting of fault from one corporation to another based simply on its status as a parent or subsidiary—has been explicitly rejected under Tennessee law. *See Thompson v. Superior Fireplace Co.,* 931 F.2d 372, 374 (6th Cir.1991). There is also no evidence to support a finding that RSI was the alter ego of CCI.

3. Plaintiffs also submit a copy of an affidavit apparently executed by Michael Wagner in another case. Although defendants do not dispute its authenticity, the affidavit is irrelevant as to the issues of this case. It describes the corporate structure of RSI and its subsidiaries only as of 1992—four years prior to the time that Hinkle was injured.

4. The crux of plaintiffs' claim is that the HTF, formed by RSI, assumed the duty of preventing injuries to the employees of RSI's subsidiaries.

that he simply did not remember the reasons for the mergers. Plaintiffs' counsel also asserts as a fact that "the HTF records show that: a) the records are invaluable in proving defendants failed to make safe a hazardous condition; b) that HTF records show that drivers are at high risk for injury using the skids." (*Id.* at 4) (citations omitted). In reality, Herron testified that he could not agree or disagree with regard to statement a), and that although some person had made statement b), it was not a part of HTF records and Herron did not know it to be a fact. Moreover, the HTF report, shown as an exhibit in Herron's deposition, was not even filed in this case. These are just examples, and certainly not an inclusive list, of attempts by plaintiffs' counsel to mischaracterize testimony by Herron.[5] In light of this lack of candor, the court has felt it necessary to examine with particularity all of the "material facts" plaintiffs claim in support of their case.

After wading through the 435 page Herron deposition, the court finds there is little, if any, support for the plaintiffs. The facts show that RSI formed a task force to look for ways to reduce accidents and increase safety consciousness throughout the Ryder enterprise. The task force knew that employees were injured loading and unloading trailers, and looked at some of the trailers used by the RACD. Furthermore, Herron went into the field to observe truck drivers as they operated the skids.

Nevertheless, it is undisputed that the main purpose of the Herron Task Force was to gather information on injuries and reduce worker's compensation costs. RSI did not become involved in the day-to-day monitoring of safety, nor did it usurp or assume the subsidiaries' responsibility for ensuring safety. In short, the purpose of the task force was to raise the consciousness of the subsidiaries about the high costs related to employ-

ee injuries. Although these acts by RSI may have been potentially helpful to the subsidiaries in bolstering safety protocols, there is no showing that this was their primary purpose.

The actions of RSI are distinguishable from those of the parent corporation in both *Boggs* and *Gaines*. In *Boggs*, the court found that the parent corporation, Blue Diamond, "had the primary responsibility for 'mine safety functions.'" *Boggs*, 590 F.2d at 658. It is clear from Herron's testimony, however, that the Ryder subsidiaries maintained the primary role in preventing accidents. In addition, in *Boggs* the court credited the plaintiffs' theory that Blue Diamond's management recognized the need for ventilation improvements in the mine and actually removed safety devices in order to open a new tunnel, but concealed those changes from federal inspectors. *Id.* Such affirmative acts of misfeasance go beyond anything alleged by Hinkle.

*Gaines* in also distinguishable. In *Gaines*, the court analyzed whether the parent corporation undertook a duty under the *Restatement (Second) of Torts* § 324A (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking

He is then asked in light of these assumptions whether Burns failed to execute his plan to reduce injuries. (Herron Dep. at 134–140). Herron says he simply cannot answer that question. Incredibly, plaintiffs' counsel cites this portion of the deposition for the proposition that "Burns did not follow through with his plan of reducing injuries."

---

**5.** Plaintiffs' counsel also tries to use deposition questions founded on assumptions to establish facts. For example, at one point in the deposition Herron is asked to assume three things: (1) that RSI's president, Tony Burns, sent a letter to the subsidiaries about safety, (2) that Burns did not receive injury reports, and (3) that Burns had developed a safety plan. No proof of these elements exists but Herron is asked to assume them.

The court in *Gaines* held that it was clear that the defendant undertook to render services within the meaning of § 324A's main text because it was clearly involved in the safety protocols of the subsidiary by reviewing safety procedures, and conducting safety audits and inspection tours. *Gaines*, 667 F.Supp. at 572 n. 3. The court went on to find that summary judgment was inappropriate on all three subparts of § 324A because factual issues remained.

In the present case, the type of activity engaged in by the parent is very different. RSI was studying whether it could reduce worker's compensation costs by reducing injuries. The main purpose of the task force was profit-related. There is no evidence that RSI undertook a duty to render services to another within the meaning of § 324A's main text. It is more accurate to say that RSI was conducting a study for its own use and if the subsidiaries subsequently found it useful in reviewing their safety protocols, that does not change the fact that the study was not conducted as a service to the subsidiaries.

In addition, plaintiffs cannot satisfy any of § 324A's three subparts. No evidence was submitted to show that RSI increased the risk of harm, or that harm was suffered because of reliance on the RSI study. *Restatement (Second) of Torts* § 324A(a) & (c). In *Gaines*, the court interpreted subpart (b) to impose liability only if the services rendered are primarily intended to benefit others. *See Gaines*, 667 F.Supp. at 573. The plaintiffs' own evidence, however, makes it clear that the purpose of the task force was primarily to benefit RSI by decreasing injury costs and increasing profits. In light of this evidence, no reasonable fact-finder could conclude that RSI undertook the duty of protecting its subsidiaries' employees.[6]

Furthermore, plaintiffs have not even attempted to provide any evidence upon which the liability of the defendants other than RSI might be based. Therefore, with respect to all the defendants, the court finds that no genuine issue of material fact exists and summary judgment is proper.

### IV. *Conclusion*

For the foregoing reasons, the court grants the defendants' motions for summary judgment.

---

**6.** It is worth noting that public policy would be ill served if any time a parent company sought to raise the safety consciousness of its subsidiaries, it would be subject to liability for injuries to its subsidiaries' employees for failing to remedy the injury-causing defect. More is and should be required to establish such liability than just seeking to make subsidiaries aware of the problems associated with employee injuries.