[No. D042260. Fourth Dist., Div. One. June 1, 2004.]

WASTE MANAGEMENT INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ROSA M. GUZMAN de PERALTA et al., Real Parties in Interest.

**COUNSEL**

Crowe & Rogan, J. Michael Crowe and Robert A. Philipson for Petitioners.

No appearance for Respondent.

The Turley Law Firm and William Turley for Real Parties in Interest.

## OPINION

**McCONNELL, P. J.**—Rafael Peralta Rios (Rafael) was killed by a trash truck while working as a mechanic for Waste Management of California, Inc. (WMCI). His wife and children (collectively the Peraltas) filed a workers' compensation claim against WMCI.[1] They also sued Waste Management, Inc. and USA Waste of California (together WMI) for negligence and wrongful death, alleging WMI controlled the budget of WMCI, its subsidiary, and thereby prevented WMCI from replacing or repairing dangerous and improperly maintained trash trucks, including the one that killed Rafael. The court overruled WMI's demurrer to the first amended complaint (complaint) and denied its motion to strike the Peraltas' claim for punitive damages. We conclude the Peraltas cannot state a cause of action against WMI and accordingly grant its petition for writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND

The complaint alleges[2] WMI and WMCI are separate entities. The trash truck that killed Rafael was in disrepair due to the acts or omissions of WMI, specifically WMI's control of WMCI's budget, which prevented WMCI from repairing or replacing the truck. WMI breached its duty of care to Rafael by ordering WMCI not to replace the defective truck and refusing WMCI's request to replace the truck even though WMI knew of the truck's dangerous condition. WMI, motivated by greed and the desire to place its own profits over the safety of others, had a policy of requiring WMCI to reduce its overhead and operating expenses. As a result of these acts and omissions, Rafael suffered serious injury and death.

WMI demurred to the complaint on the grounds: (1) the Peraltas' claim for negligent control of a subsidiary corporation does not state a cause of action; (2) the Peraltas did not allege facts showing any independent basis for imposing liability on WMI; (3) the Peraltas' allegations show WMI is a coemployer and thus their action is barred by the exclusive remedy of workers' compensation; and (4) the Peraltas have not alleged facts to show how WMI's negligence caused Rafael's death. The court overruled the demurrer and also denied WMI's motion to strike the Peraltas' punitive damages claim.

---

[1] Although this allegation does not appear in Peraltas' complaint, the parties do not dispute that the Peraltas are receiving workers' compensation benefits as a result of Rafael's employment-related injuries and death.

[2] On review of a ruling on demurrer, we assume the truth of all properly pleaded material allegations of the complaint. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 453, fn. 3 [84 Cal.Rptr.2d 843, 976 P.2d 214].)

## DISCUSSION

### I

In reviewing a ruling on demurrer, we exercise our independent judgment on whether, as a matter of law, the complaint states a cause of action. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368]; *Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1201 [84 Cal.Rptr.2d 496].) We accept as true the properly pleaded material facts but do not assume the truth of contentions, deductions or conclusions of fact or law. (*Interinsurance Exchange v. Narula* (1995) 33 Cal.App.4th 1140, 1143 [39 Cal.Rptr.2d 752]; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) We examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Wolfe v. State Farm Fire & Casualty Ins. Co.* (1996) 46 Cal.App.4th 554, 560 [53 Cal.Rptr.2d 878].)

### II

"A tort, whether intentional or negligent, involves a violation of a *legal duty*, imposed by statute, contract or otherwise, owed by the defendant to the person injured." (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 6, p. 61; *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1078 [107 Cal.Rptr.2d 801].) Without such a duty, any injury is injury without wrong. (5 Witkin, *supra*, § 6, p. 61; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57–58 [77 Cal.Rptr.2d 709, 960 P.2d 513] [duty is threshold element of cause of action for negligence].) "The existence and scope of duty are legal questions for the court." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

The harm for which the Peraltas seek damages was suffered by Rafael in the course of his employment with WMCI. Thus, the existence of any duty owed by WMI arises in the context of Rafael's employment with WMCI.

### III

██ Under the workers' compensation scheme, an employee's remedy against an employer for a work-related injury is generally limited to the benefits provided by statute. (Lab. Code, § 3601.) Nevertheless, a plaintiff who recovers workers' compensation from an employer can pursue common law tort actions against third parties for independent acts of negligence. (Lab. Code, § 3852; *Privette v. Superior Court* (1993) 5 Cal.4th 689, 697 [21

Cal.Rptr.2d 72, 854 P.2d 721]; *Orosco v. Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1664 [60 Cal.Rptr.2d 179].) This rule applies even if the third party tortfeasor is the parent company of the plaintiff's employer, as long as there are independent acts of negligence. (*Gigax v. Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 598 [186 Cal.Rptr. 395] (*Gigax*); *Boggs v. Blue Diamond Coal Co.* (6th Cir. 1979) 590 F.2d 655, 662.) However, a parent corporation is not liable for injuries of a subsidiary's employee in the absence of evidence establishing a duty owed by the parent corporation to the employee. (*Rick v. RLC Corp.* (E.D.Mich. 1981) 535 F.Supp. 39, 44.) ■ Although the relationship of parent and subsidiary does not by itself give rise to any duty on the part of the parent to the subsidiary's employees, the parent may owe a duty arising out of obligations independent of the parent-subsidiary relationship. (*Ibid.*)

■ Employers have a nondelegable duty to furnish their employees with a safe place to work. (Lab. Code, § 6400; *Bonner v. Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d 1023, 1035 [275 Cal.Rptr. 337]; *Levels v. Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 443 [121 Cal.Rptr. 779]; see also *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1126 [63 Cal.Rptr.2d 359] [duty to provide safe workplace is imposed only on worker's immediate employer or those who contract for services of immediate employer but retain control over work].) ■ An employer's parent corporation is not responsible for the working conditions of its subsidiary's employees based on the existence of the parent-subsidiary relationship. (*Muniz v. National Can Corp.* (1st Cir. 1984) 737 F.2d 145, 148; *Rick v. RLC Corp.*, *supra*, 535 F.Supp. at pp. 42–43.) Rather, the parent corporation may be liable only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary's workplace. (*Muniz v. National Can Corp.*, *supra*, at p. 148; *Hinkle v. Delavan Industries, Inc.* (W.D.Tenn. 1998) 24 F.Supp.2d 819, 821; cf. *Johnson v. Abbe Engineering Co.* (5th Cir. 1984) 749 F.2d 1131, 1133 [parent company liable for injuries to subsidiary's employees where parent undertook to conduct and oversee safety inspections for subsidiary].) To impose liability for an employee's injuries based solely on a parent-subsidiary relationship would result in treating the parent as an employer without providing it with the shield of employer immunity under workers' compensation laws. (*Love v. Flour Mills of America* (10th Cir. 1981) 647 F.2d 1058, 1063.) Moreover, without a showing of an independent tort, plaintiffs would be able to obtain double recovery for the same act, a result that would undermine the central purpose of the workers' compensation system. (*Shields v. County of San Diego* (1984) 155 Cal.App.3d 103, 112 [202 Cal.Rptr. 30].)

IV

The Peraltas have not alleged any independent tort committed by WMI. There are no allegations WMI assumed a duty to ensure the safety of WMCI's employees, or that WMI owned, operated, manufactured, sold or serviced the truck that killed Rafael. In this regard, the Peraltas' reliance on the Sixth Circuit Court of Appeals' decision in *Boggs v. Blue Diamond Coal Co., supra,* 590 F.2d 655 is misplaced. In *Boggs,* the court held the parent corporation was not exempt from tort liability for a mining disaster that killed the subsidiary's employees. (*Id.* at p. 663.) The parent corporation, having primary responsibility for mine safety functions, engaged in active misfeasance when it authorized removing existing ventilation and safety devices in the mine and concealed the changes from the mine inspectors who could have prevented the accident. The changes made by the parent corporation caused the explosion. (*Id.* at p. 658.)

Here, in contrast, there are no allegations WMI committed any independent acts of negligence or misfeasance. Unlike the parent corporation in *Boggs,* WMI did not direct its subsidiary's safety operations. The responsibility for worker safety belonged to and remained with WMCI, which provided the allegedly defective truck and exclusively controlled the truck, the work site and the injured employee. (*Kirk v. Kemp Bros.* (1970) 12 Cal.App.3d 136, 141 [90 Cal.Rptr. 553] [person in control of premises is employer subject to statutory, nondelegable duty to provide safe place of employment].) Significantly, the Peraltas have not alleged WMI ordered or required WMCI to continue using the trucks, but only that WMI refused to allocate corporate funds to repair or replace those trucks as a cost-savings measure.

Moreover, nothing in the holding of *Boggs* relieves a subsidiary's employee of the burden of proving the elements of a negligence cause of action against the parent, including the threshold element of a duty owed by the parent to the employee. (See *Rick v. RLC Corp., supra,* 535 F.Supp. at pp. 44–45.) Even if, as the Peraltas' claim, WMI engaged in a scheme to plunder monies belonging to WMCI to repair and replace WMCI's trash trucks, WMI's duty was to WMCI as its subsidiary, not to WMCI's employees. Negligently controlling or intentionally mismanaging a subsidiary's budget does not create a duty on the part of the parent corporation to ensure safety or prevent injuries to the subsidiary's employees. WMI's act of withholding capital or denying a budget request may have caused financial hardship to WMCI, but it did not cause Rafael's injuries. Despite their artful pleading, the Peraltas have not alleged WMI's duty was independent of the parent-subsidiary relationship and thus, they cannot state a separate tort cause of action as to WMI.

Unlike the facts in *Boggs*, the ultimate responsibility for employee safety here remained with WMCI as employer. (*Bonner v. Workers' Comp. Appeals Bd., supra*, 225 Cal.App.3d at pp. 1034–1035.) WMCI's continued use of trash trucks it knew were dangerous or in disrepair was an unfortunate and ultimately tragic business decision. Even if, as the Peraltas allege, WMI controlled or influenced WMCI's budget, WMCI remained a separate legal entity in control of allocating its own resources. The Peraltas cannot state a cause of action based on allegations that WMI directed and authorized the *manner* in which WMCI conducted its business.

This court's decision in *Gigax, supra*, 136 Cal.App.3d 591, does not advance the Peraltas' position. In *Gigax*, we held an employee of a subsidiary company may sue a parent corporation who has designed and manufactured a defective product which injured the subsidiary's employee, where the employee had also received workers' compensation benefits from his employer. (*Id.* at pp. 594, 601.) We reasoned because the parent company acted and operated as a separate business entity and exercised no control over the employee, the parent company was not an "employer" for purposes of the exclusive remedy provisions of workers' compensation. (*Id.* at pp. 601, 607.)

The subsidiary's employee in *Gigax* was able to maintain a separate action against the parent company based on an independent tort for products liability. Here, in contrast, the Peraltas have not shown any independent basis for WMI's alleged liability. (Cf. *Miller v. King* (1993) 19 Cal.App.4th 1732, 1734–1735 [24 Cal.Rptr.2d 284] [injured employee of corporation entitled to sue property owner as third party tortfeasor on theory of premises liability].) The complaint states the truck that killed Rafael, owned and operated by WMCI, was in a dangerous condition because it was "negligently and/or intentionally improperly maintained, serviced and/or repaired." Because WMCI created the risk of harm and was actively careless in allowing its employee to use the defective and dangerous truck, any claims of liability for misfeasance are necessarily directed at WMCI, not WMI.

V

The Peraltas seek to impose liability on WMI by alleging WMI instructed WMCI not to repair or replace the trucks and affirmatively prevented WMCI from doing so by withholding funds. However, the Peraltas have not pleaded WMI exercised control of WMCI " 'to a degree that exceeds the control normally exercised by a parent corporation.' " (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 738 [80 Cal.Rptr.2d 454].) If, as the Peraltas claim, WMI completely and absolutely controlled WMCI, rendering WMCI incapable of repairing or replacing its own trucks, the corporations must be viewed as a single, indistinguishable economic entity. By alleging WMCI did

not have the right to allocate its own resources, the Peraltas have alleged liability based only on the parent-subsidiary relationship. Under that theory, WMI is an employer entitled to the protection of the workers' compensation exclusive remedy. (Lab. Code, § 3601; see *Love v. Flour Mills of America, supra,* 647 F.2d at p. 1063; *Volb v. G.E. Capital Corp.* (1995) 139 N.J. 110 [651 A.2d 1002, 1009]; *Dobbs v. The Journal Co.* (1984) 137 Mich.App. 663 [358 N.W.2d 32, 34].)

Despite their attempt to plead independent negligent acts or omissions, the Peraltas simply attribute or impute to WMI the negligent acts and omissions of WMCI. Allowing a third-party tortfeasor action against WMI based on the imputed acts or omissions of WMCI "would directly oppose the purpose of the Workers' Compensation Act and the exclusive remedy provision of Labor Code section 3601." (*Shields v. County of San Diego, supra,* 155 Cal.App.3d at p. 112.) Further, the Peraltas' claim that WMI caused the unsafe working conditions by controlling WMCI's fiscal policies and management decisions is nothing more than stating WMI is responsible for the acts or omissions of WMCI in implementing those policies and decisions. (See *Orosco v. Sun-Diamond Corp., supra,* 51 Cal.App.4th at p. 1670 [even if defendant corporations controlled operations of industrial plant through the employer, corporations were not liable for employee's injuries absent some negligence by corporations separate from employer's negligence].) The Peraltas are not entitled to "something that is denied to [the families of] other workers: the right to recover tort damages for industrial injuries caused by [an] employer's failure to provide a safe working environment." (*Privette v. Superior Court, supra,* 5 Cal.4th at p. 700.)

## VI

The consequences of allowing the Peralta's complaint to state a cause of action on these facts would be to create presumptive misfeasance by any parent corporation that approves a subsidiary's budget whenever an employee of the subsidiary is injured due to poorly maintained equipment. We decline to sanction such a far-reaching result. Rather, we conclude that where, as here, a subsidiary corporation has satisfied its obligation to an employee by securing the payment of workers' compensation benefits, the employee cannot hold the parent corporation liable for harm suffered by the employee in the course of employment unless the parent corporation's alleged acts of negligence are separate from those of the subsidiary. Because the act or omission that resulted in Rafael's injury and death—providing him with an

unsafe truck—was the same act or omission alleged against WMI as a result of its control of WMCI's budget, the Peraltas cannot state a cause of action against WMI.[3]

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order overruling the demurrer and enter a new order sustaining the demurrer without leave to amend. The stay previously issued by this court on August 11, 2003, is vacated. Costs are awarded to the prevailing party in the writ proceeding.

McIntyre, J., concurred.

**NARES, J.,** Dissenting.—As the majority acknowledges, an injured employee who recovers workers' compensation benefits from an employer may also pursue a separate civil action against third parties for damages caused by their independent, tortious acts: "The claim of an employee . . . for compensation does not affect his or her claim or right of action for all damages proximately resulting from the injury or death against any person other than the employer." (Lab. Code, § 3852.)

"The [Workers' Compensation] Act's exclusivity clause applies to work-related injuries regardless of fault, including those attributable to the employer's negligence or misconduct [citation], as well as the employer's failure to provide a safe workplace [citation]. But the exclusivity clause does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury." (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 697 [21 Cal.Rptr.2d 72, 854 P.2d 721].) Further, as the majority also recognizes, this rule permits the employee to sue the parent company of the employee's employer for its own independent acts of negligence or other misconduct. (*Gigax v. Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 601 [186 Cal.Rptr. 395] (*Gigax*); *Boggs v. Blue Diamond Coal Co.* (6th Cir. 1979) 590 F.2d 655, 662 (*Boggs*).)

In *Gigax*, we held that an employee of a subsidiary company may sue a parent corporation who has manufactured a defective product which caused injury to an employee of the subsidiary company when used in the scope of employment, even though the parent company had no right to control the day-to-day activities of its subsidiary's employee, an attribute normally inherent in an employer-employee relationship. We held that the exclusive remedy principle extended no further than to the employer with the right to

---

[3] In light of our disposition, we need not address WMI's further contentions as to causation and punitive damages.

control the employee. (*Gigax, supra,* 136 Cal.App.3d at p. 598–601; see also *Shields v. County of San Diego* (1984) 155 Cal.App.3d 103, 111 [202 Cal.Rptr. 30].)

No California court has addressed the precise factual situation presented here. However, *Boggs, supra,* 590 F.2d 655, a case cited with approval by the majority, involved a similar factual situation to the one alleged by the Peraltas and demonstrates why their allegations are sufficient to support a claim against the parent corporation of Rafael's employer. In *Boggs,* the widows of 15 miners killed in a methane gas explosion at the Scotia Mine sued their employer, the mine operator, and its parent corporation, Blue Diamond Coal Co. (*Id.* at p. 657.) The plaintiffs alleged that they were not subject to the exclusivity of the workers' compensation system because of Blue Diamond's separate and independent negligence in failing to remedy serious safety problems in order to reap a greater profit: "Blue Diamond's management recognized that improvements in the ventilation of the Scotia Mine were needed in order to minimize the accumulation of methane gas but negligently delayed construction of these improvements. Blue Diamond authorized re-moval of existing ventilation and safety devices in order to open a new tunnel of the mine but concealed the changes from federal mine inspectors who would have taken immediate steps to correct the dangerous condition or to close the mine had they known of the changes. The ventilation changes increased the methane gas in the existing tunnel and caused the explosion. Blue Diamond recklessly created a dangerous situation and put the miners' lives at risk in order to increase its profits in a rising market." (*Id.* at p. 658.)

The district court held that the plaintiffs' claims were barred by the workers' compensation system and the Sixth Circuit Court of Appeals reversed. Rejecting the argument that Blue Diamond should be considered the miners' employer for purposes of workers' compensation exclusivity, the Sixth Circuit held that the parent company could not rely on protections of being a separate corporate entity from its subsidiary, but then also request the court to ignore that separateness when it benefited the parent in the workers' compensation setting: "[A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee." (*Boggs, supra,* 590 F.2d at p. 662.)

The *Boggs* court then went on to conclude that because the plaintiffs had alleged independent acts of negligence by the parent company, their claim was not barred by Tennessee's workers' compensation system: "The parent should be

liable under customary principles of the common law for harm resulting from its own negligent or reckless conduct. [Citation.] [¶] This is not derivative liability. The parent is not liable under the doctrine of Respondeat superior for the negligence of the subsidiary. [Citation.] For purposes of the doctrine of Respondeat superior, a subsidiary which provides workmen's compensation should be treated as having terminated the derivative liability of its parent or principal by satisfaction of the claim. [Citation.] But neither these rules of agency nor the workmen's compensation law insulate the parent from tort liability for its *independent acts of negligence which cause injury to its subsidiary's employees.*" (*Boggs, supra,* 590 F.2d at p. 663, italics added.)

Likewise in this case, the Peraltas adequately pleaded independent negligent or wrongful acts by Waste Management, Inc. and USA Waste of California (together, WMI). They first alleged that the garbage truck that allegedly killed Rafael Peralta "was negligently and/or intentionally improperly maintained, serviced and/or repaired and was in a dangerous condition." They then alleged that WMI controlled the budget of its subsidiary Waste Management of California, Inc. (WMCI) and "ordered, instructed, and/or prevented WMCI from replacing the incident truck and/or performing necessary repairs on the truck." The Peraltas alleged that WMI knew of the dangerous condition of the truck, and that WMCI had requested that the dangerous truck be replaced, but WMI "refused and/or blocked said request" in the interest of "saving money" and increasing profits. These allegations, which we must accept as true for the purposes of a demurrer, are more than adequate to take the Peraltas' claim against the parent WMI outside the workers' compensation system. The Peraltas allege independent tortious acts by WMI that directly resulted in Rafael's death. As the allegations of the complaint make clear, the Peraltas are not alleging liability based upon respondeat superior or other derivative liability because of the acts of the subsidiary. Rather, they allege that independent tortious acts by WMI created a risk of harm that would not have otherwise existed. The acts were those of WMI and it may therefore be sued outside of the workers' compensation system because the Peraltas allege that it recklessly (or intentionally) created a dangerous situation and put employees' lives at risk in order to increase its profits. (*Boggs, supra,* 590 F.2d at p. 663.) No more need be alleged to state a claim for tort liability against WMI.

The majority concludes that there was no independent duty on the part of WMI here because in general safety issues are the responsibility of the employer. However, this conclusion misapprehends both the basis for liability of third parties who injure employees and general principles of tort law.

" 'The Labor Code does not purport to alter the correlative rights and liabilities of persons who do not occupy the reciprocal statuses of employer and employee. Our workmen's compensation laws were not designed to

relieve one other than the employer from any liability imposed by statute or by common law.' [Citation.]" (*Pac. Emp. Ins. Co. v. Hartford etc. Ins. Co.* (1956) 143 Cal.App.2d 646, 648 [299 P.2d 928].) Further, "[t]he workers['] compensation statutes governing employer and employee actions against third parties do not define the substantive law which determines whether an employee or an employer will in fact recover. [Citation.] Instead, the substantive law which governs employer and employee actions is usually the general tort law." (*County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 873–874 [140 Cal.Rptr. 638, 568 P.2d 363].)

Thus, we must apply common law negligence principles to determine if there was a duty owed in this case. The majority's conclusion that there was no duty on the part of WMI fails to recognize the difference between misfeasance and nonfeasance in common law negligence cases. "As Witkin notes, '[t]he "legal duty" of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated. (b) An affirmative duty where the person occupies a particular relationship to others. In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm.' [Citation.] Thus, in considering whether a person had a legal duty in a particular factual situation, a distinction must be made between claims of liability based upon misfeasance and those based upon nonfeasance. 'Misfeasance exists when the defendant is responsible for making the plaintiff's position worse, i.e., defendant has created a risk. Conversely, nonfeasance is found when the defendant has failed to aid plaintiff through beneficial intervention. . . . [L]iability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care [to prevent others from being injured as a result of affirmative conduct].' [Citations.]" (*Andrews v. Wells* (1988) 204 Cal.App.3d 533, 538–539 [251 Cal.Rptr. 344], fn. omitted.)

The Peraltas allege in their complaint that WMI committed *misfeasance*, i.e., that its affirmative conduct in instructing its subsidiary not to replace or repair dangerous garbage trucks, despite the subsidiary's request, caused Rafael's death. It was not based upon a duty created by any relationship of parent and subsidiary, employer and employee, or the employer's duty to maintain a safe workplace. The allegations are that WMI's *independent acts caused or increased the risk of harm.* The Peraltas do not allege, as the majority claims, that WMI breached a nondelegable duty to provide a safe workplace or that the negligent acts of WMCI should be imputed to WMI. The Peraltas are *not* alleging, as the majority concludes, that WMI is responsible for the acts or omissions of its subsidiary. Rather, they are claiming that when

WMCI itself attempted to create a safe working environment, WMI prevented the needed actions and instructed WMCI not to take any action.

The majority reaches its conclusion by ignoring the allegations of the complaint. For example, the majority states that the Peraltas did not allege that WMI "ordered or required WMCI to continue using the trucks." (Maj. opn., *ante*, at p. 111.) In fact, that is exactly what the Peraltas claim. The complaint alleges that WMI "ordered, instructed, and/or prevented WMCI from replacing the incident truck and/or performing necessary repairs on the truck." The majority also states that "withholding capital or denying a budget request may have caused financial hardship to WMCI, but it did not cause Rafael's injuries." (Maj. opn., *ante*, at p. 111.) The Peraltas allege that but for WMI's refusal to allow WMCI to operate with safe vehicles, Rafael would not have died. That was also the basis for liability alleged in *Boggs, supra,* 590 F.2d 655. The majority focuses on the actions of the subsidiary, WMCI, remarking that WMCI's use of unsafe trash trucks was an "unfortunate and ultimately tragic business decision," and that WMCI was "in control of allocating its own resources." (Maj. opn., *ante*, at p. 112.) However, the Peraltas allege it was WMI who made this business decision and that *it* was in control of WMCI's resources. The majority overlooks the actual allegations pleaded against WMI, thus reaching a conclusion that is not supported by the Peraltas' complaint.

The majority attempts to distinguish this case from a situation where a parent corporation takes actual control of safety functions that are ordinarily the responsibility of the subsidiary. As the majority acknowledges, in that situation the employee may sue the parent for negligence outside the workers' compensation system. (See *Boggs, supra,* 590 F.2d at p. 662; *Johnson v. Abbe Engineering Co.* (5th Cir. 1984) 749 F.2d 1131, 1133.) However, this attempted distinction is one without relevance to the question presented. While these cases found liability attached under *nonfeasance* principles because the parent company assumed a safety duty normally relegated to a subsidiary, none of the cases cited by the majority holds that an employee cannot also sue a parent corporation who has not assumed all safety functions on the basis of *misfeasance* for its actions related to the particular accident in question. Any third party, whether a complete stranger or as here a parent corporation, who negligently or intentionally creates a risk of harm or increases a risk may be held liable for such acts. Second, the notion that WMI could only be held liable if it assumed control over day-to-day activities of WMCI runs contrary to the rationale under which courts have concluded that parent corporations are not considered employers subject to the workers' compensation system: they have no right to control day-to-day activities of the subsidiary's employees. (*Gigax, supra,* 136 Cal.App.3d at pp. 598–601; *Shields v. County of San Diego, supra,* 155 Cal.App.3d at

p. 111.) Third, even if there were such a requirement, the complaint sufficiently alleges that WMI had effectively become the arbiter of safety at WMCI. The fact that WMI did so by completely controlling the funding of WMCI as to safety and refusing to allow WMCI to spend the money necessary to make Rafael's workplace safe does not mean WMI is any less liable than a parent corporation who affirmatively takes over safety operations, but conducts them in a negligent manner. In fact, if the allegations against WMI are proven, its actions, because they are affirmative and intentional, are more appropriately subject to liability than merely negligent safety practices.[1]

The majority concludes that the allegations of the complaint that WMI so controlled WMCI that it could not repair or replace its trucks make them essentially one entity and the parent WMI thus subject to the protections of the workers' compensation system. However, as discussed above, the court in *Boggs* rejected an identical argument made by the parent corporation in that case. (*Boggs, supra,* 590 F.2d at p. 662.)

The majority last concludes that denying WMI's demurrer would "create presumptive misfeasance by any parent corporation that approves a subsidiary's budget whenever an employee of the subsidiary is injured due to poorly maintained equipment." (Maj. opn., *ante,* at p. 113.) But that is not what the Peraltas are attempting to establish. They merely seek to impose tort liability on a parent corporation that allegedly created an unsafe workplace by refusing to allow its subsidiary to replace defective or dangerous garbage trucks, despite the subsidiary's notice to the parent corporation that the trucks were in a dangerous condition. Those allegations establish independent misfeasance on the part of WMI that is actionable under California law.

The allegations of the Peraltas' complaint, taken as true for the purposes of WMI's demurrer, were sufficient to support a claim based upon the independent tortious conduct of WMI. I would therefore deny the petition for writ of mandate seeking to set aside the court's order overruling WMI's demurrer.

A petition for a rehearing was denied June 25, 2004, and the petition of real parties in interest for review by the Supreme Court was denied September 22, 2004. George, C. J., did not participate therein.

---

[1] It is also interesting to note that the cases cited by the majority as finding no liability on the part of the parent corporation for dangerous workplace conditions at the subsidiary, with one exception, did not determine the liability question based upon the pleadings, but only after evidence was received as to the extent of the parent corporation's involvement in safety functions. (See *Rick v. RLC Corp.* (E.D. Mich. 1981) 535 F.Supp. 39 [directed verdict/judgment notwithstanding the verdict]; *Muniz v. National Can Corp.* (1st Cir. 1984) 737 F.2d 145 [judgment following court trial]; *Hinkle v. Delavan Industries, Inc.* (W.D. Tenn. 1998) 24 F.Supp.2d 819 [summary judgment].) The one case decided at the pleading stage did so because the employee alleged only derivative liability on the part of the parent company, not an independent act of negligence. (*Love v. Flour Mills of America* (10th Cir. 1981) 647 F.2d 1058, 1063.)